## WINSTON vs. WESTFELDT.

1. The doctrine of *lis pendens* does not apply to negotiable paper.
2. An injunction in force against the negotiation of a note, does not destroy its negotiability.
3. An endorsee who acquires a negotiable note before maturity, *bona fide* and for valuable consideration, without notice, is not bound by a decree in a chancery suit to which his endorser was a party, although he acquired the note after the rendition of the decree.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

ASSUMPSIT by George Westfeldt against Augustus A. Winston, on a promissory note for $2156$\frac{10}{100}$ executed by said Winston and others, dated June 13, 1848, payable three years after date to the order of Jonathan Bliss, negotiable and payable at the Bank of Mobile. The plaintiff declared as endorsee of said Bliss.

The facts proved on the trial, were substantially as follows: The Tombigbee Bank of Mississippi held a claim against one Lacy, which was in the hands of Jonathan Bliss for collection. This claim was compromised, and the note now sued on was received in part payment of it, Lacy being one of the makers of the note. The Tombigbee Bank failed, and made an assignment of its assets to one Murdock, to whom Bliss delivered the note in suit, having endorsed it in blank; and, before its maturity, it came to the hands of Westfeldt by purchase; but from whom he purchased, does not appear. Before Westfeldt's purchase, however, certain creditors of the Tombigbee Bank had instituted proceedings in the Chancery Court of Sumter, to condemn the amount due on the notes

received by Murdock from Bliss to the satisfaction of their debts. The bill sets out the compromise of Lacy's indebtedness to the Bank, and alleges that the assignment to Murdock was fraudulent. Lacy, Bliss, Murdock and the Bank are made defendants to the bill; and an order was made, in the progress of the cause, enjoining the transfer by Bliss of Murdock's notes. Service was perfected on the defendants; and a decree was rendered, condemning the notes, and directing the master to ascertain and report the amount due from Lacy to the Bank, and from the Bank to the complainants. The master's report under this reference was made and confirmed; and, in pursuance of this decree, Lacy paid to the complainants the amount of the note now sued on, having been indemnified. Westfeldt purchased the note on the 16th of March, 1850, a few days after the confirmation of the master's report, and while said chancery suit was under an order of continuation for further proceedings as to other parties.

Upon this state of facts, the court charged the jury, that the plaintiff was entitled to recover. Several other charges were also given, which it is unnecessary to state, as the opinion of the court is based upon this single charge, which is assigned for error.

HOPKINS and JONES, for plaintiff in error:

1. Chancery has jurisdiction to restrain, by injunction, the transfer and negotiation of bills of exchange and other negotiable paper. 2 Story's Equity 238 § 906; ib. 239 § 908; Eden on Injunctions, ch. 14, 210, 211; Chitty on Bills 119, 120; Hood v. Aston, 1 Russ. 412. And the effect of this must be, to destroy its negotiability; otherwise, the remedy would be incomplete. 1 Russ. 412; 9 Wheat. 738, 845; 7 Vesey 413.

2. Westfeldt is not, in law, a *bona fide* holder; he is a holder with notice, being a purchaser *pendente lite*. *Lis pendens* is notice to all the world. "Whoever purchases property *pendente lite*, takes it subject to any decree which may be made in respect to it in the pending suit." 6 Barbour 138; 2 Leading Cases in Equity (White & Tudor's) 154 to 157; Metcalf v. Pulvertoft, 2 Vesey & B. 200; Murray v. Ballou, 1 Johns. Ch. 566; Harris v. Carter, 3 Stewart 238; Chaudron v. Ma-

49

gee, 8 Ala. 570; Bolling v. Carter & Womack, 9 ib. 921. The doctrine of *lis pendens* also existed in the civil law. Droit Rom. 117; Merlin's Repert.

3. The decree being rendered by a court having jurisdiction, it is conclusive until reversed, whether right or wrong. It cannot be collaterally impeached. Richardson v. Hobart, 1 Stewart 500; Wyman v. Campbell, 6 Porter 219; Cole v. Connolly, 16 Ala. 280; Savage v. Benham, 17 ib. 119; Cox v. Davis, ib. 714; Lightsey v. Harris, 20 ib. 409.

4. Westfeldt being the endorsee of Bliss, and claiming as such, the decree against Bliss is conclusive against him. A judgment or decree is conclusive against parties and privies. 1 Starkie on Ev. 194, 219; 17 Mass. 367; 6 Porter 219; 18 Ala. 241.

5. When things are shown, at any time, to have existed in a certain state, they are presumed to continue so until the contrary is shown. The note is shown to have passed to Murdock in March, 1848, and it must be presumed to have remained in his possession until Westfeldt acquired it. Best on Presumptions, 186, (47 Law Library 119;) 3 Starkie on Ev. 1252.

6. A party cannot contradict, by evidence, a fact which he has alleged or admitted by his pleading. 2 Starkie on Ev. 29. So Westfeldt, having stated in his declaration that Bliss endorsed the note to him, is concluded by the statement, and the defendant could not be required to prove that fact.

7. The court erred, in charging that the burthen of proof was on the defendant to show when and from whom plaintiff acquired the note. The *onus* of proving this was on plaintiff, because: 1. He had alleged in his declaration that he acquired it from Bliss, who was a party to the chancery suit; 2. When a note is shown to have been fraudulently or illegally put in circulation, it is on the plaintiff to show how and when he acquired it. Thompson v. Armstrong, 7 Ala. 256; Marston v. Forward, 5 ib. 349; Boyd v. McIvor, 11 ib. 822.

8. It is insisted, that the proof was sufficient and conclusive to show that plaintiff acquired the note after *lis pendens*, and directly or indirectly from a party to the chancery suit; but if it was not, there was certainly strong evidence to that effect; and if the evidence left that point doubtful, the court

erred in taking the question of fact from the jury, and charging that plaintiff was entitled to recover. It is only where there is no conflict or doubt in the evidence, that the court can thus charge.

P. PHILLIPS, *contra:*

The fact that Westfeldt gave less than the amount due upon the note, at the date of his purchase, does not divest him of the character of a *bona fide holder*. It is true, that decisions are numerous, that when the note, as between the maker and the payee, has no real existence, so that the payee could not maintain a suit thereon, a sale of the note for a less sum than is due upon it has been regarded as affected by the statute of usury. But here the note has a *bona fide* existence; it is founded upon a real transaction; and Bliss, the payee, could have sued thereon. It was, therefore, as much the subject of a sale, as chattels ordinarily are; and the price paid for it concerned only the buyer and seller, and in no wise affected the character of the transfer. The necessities of commerce, at a very early period, led to the use of bills of exchange. They constitute the medium through which its vast operations are carried on. Hence, in all civilized nations, laws are passed inviting the greatest confidence in their integrity. Such is the sanctity which a wise policy has thrown around the *bona fide* holder of such paper, that his right thereto will be maintained, though he claims through one who obtained it by "fraud, theft, or robbery. Roberson v. Smith, 18 A. R. 220; 43 Law Library, Smith's Leading Cases, 362; Burrows 1527. In no other species of property can the owner be deprived of his right by such means; nor a purchaser acquire a perfect title, from one who possesses none. Again; when such a paper is sued on, it imports a consideration; and the holder is never called on, even to prove how he acquired it, until the defendant has made out a *prima facie* case, showing that the note had been obtained from him, or some intermediate party, by *fraud* or *force;* or that it had been lost; or that it was originally infected with illegality. Byles on Bills, 87.

The plaintiff in this case, occupying the position of a *bona fide* holder, and the proof having gone further, in showing the

time he acquired it, and the consideration paid for it, the statute having placed notes payable in Bank upon the same footing as bills of exchange, he could not be defeated by any defence whatever.

While the defendant admits, that if the transfer had been the result of robbery, the plaintiff would still have a good title, yet he insists, that the filing of the bill in Sumter county, and the proceedings thereon, destroy his right. But it is denied that the rule of *lis pendens* applies to negotiable paper.

The earliest trace of it is to be found in the common law. In Croke's Eliz. it is said, that after a writ in a real action is sued out, he who purchases the estate is guilty of champerty, according to the statute of Edward. Arundel v. Arundel, p. 677. The rule had no place in the Equity Jurisprudence, until it was introduced by Lord Bacon. Lord Bacon's Works, 12th rule. By reference to the language of said rule it will be found to use the word "purchase," and from its whole tenor it will be seen to apply to cases involving land only. All the authorities concur in the declaration, that it was introduced in analogy to the rule at common law in a real action. In one of the earliest cases applying this rule, it was said by the Chancellor, that it had been suggested very properly that some plan should be adopted for making a register of all bills involving the title to real estate, so that those who desired to purchase lands, might have the means of ascertaining whether they were the subject of litigation. Anonymous, 1 Vern. 318. Notwithstanding the court, in this case, took time to consider,—nothing was done; and purchasers of real estate in England remained subject to the hazard of *lis pendens,* until the 2d of Victoria; which enacts, *lis pendens* shall not operate as notice against purchasers, without being properly registered. Quoted 71 Law Library, 143.

There is no case to be found in the English or American decisions where this doctrine has been extended to negotiable paper. On the contrary, one of the ablest of English elementary writers, makes this emphatic declaration: "There is no case, in which equity has determined the property of goods to be affected by reason of a *lis pendens,* where possession is the principal evidence of ownership, as of personal chattels." Powell on Mort. 2 vol. 616. And Chancellor

Kent, who was disposed to extend the doctrine to bonds, and choses in action not negotiable, says: "As to cash, or negotiable paper, not due, or perhaps moveable personal property, such as horses, cattle, grain, &c., I am not prepared to say, the rule is to be carried so far as to affect such sales. The safety of commercial dealing would require a limitation of the rule." Murray v. Lilburne, 2 John. Chan. 444. There might be some reason in applying the doctrine, as Chancellor Kent proposed, to "choses in action;" for these, by the policy of the common law, were not assignable, and therefore the filing of the bill would give a right upon the maxim "first in time, first in right. Co. Litt. 114; Hinton v. Nelmes, 13 A. R. 227. For further reference as to the origin of this doctrine, and its application both in the courts of England and this country, see Murray v. Ballou, 1 Johns. Ch. 531; Newman v. Chapman, 2 Rand. 102; Murray v. Blackford, 1 Wend. 593; Tongue v. Morton, 6 Harris & J. 23; Brightman v. Brightman, 1 Rhod. I. 120; Viner's Abrg. 15 vol. 128; Metcalf v. Pulvertorft, 2 Ves. & B. 204; Colombus v. Slim, 18 Eng. C. L. 436; Le Neve v. Le Neve, Note, 71 Law Lib. 143.

It is not denied that chancery will entertain jurisdiction to enjoin the transfer of a negotiable note, in proper cases, as was quoted from Story's Eq. Juris, and in the case from 1 Russ. But, if, in defiance of the injunction, negotiable paper is transferred to a *bona fide* holder, the only effect would be to give the complainant in the bill the redress to be found in the authority of the Court, to imprison the defendant until he paid the amount of the note transferred, or so much as would satisfy the complainant's demand, or to sequester his estate. Johns v. Davis, 2 Rob. Virg. Rep. 729. And this is all that is meant by the Lord Chancellor in the case from Russel, when he speaks of the " more effectual remedy by injunction;" and it may be further remarked, that if the doctrine of *lis pendens* applied, there was no necessity for an injunction. But the Chancellor says, that *lis pendens* was far from such a security as a prudent man would desire to have. None of the cases cited by defendant go further than to sustain the jurisdiction of the Court of Chancery; they do not declare that the negotiability of the instrument is thereby

destroyed. In the case of Jervis v. White, an injunction had been granted against White; and a motion was made to extend it to the defendant, Bolt, who had received, pending the injunction, a bill from White, in the partnership's name, for an individual debt of White to him. Mansfield, of counsel, contended upon the grossness of this case; and that the negotiation of this bill was a contempt; and that it was a case of *lis pendens*. Lord Eldon granted the motion to extend the injunction, remarking, "I say nothing as to the *lis pendens* applying to negotiable security," and the bill was ordered to be deposited, to await the trial "upon the *bona fides* with which Bolt received this bill." 7 Vesey 413.

But suppose the doctrine to apply to negotiable paper, the burden of proof was with the defendant, to show that Westfeldt obtained the note from one of the defendants to this bill, and there is not any proof of this. 5 Leigh 664; Newman v. Chapman, 2 Rand. 93; 6 B. Munroe 446.

' The suit must also affect the estate, and not merely money secured on it. It must act directly, and not collaterally. Worsley v. Earl Scarboro, 3 Atkyns 392.

But even in cases where this doctrine has always been applied, the rule laid down in Sorrell v. Carpenter has uniformly been acted upon, to wit, that as "against a *bona fide* purchaser, who bought *pendente lite*, without actual notice, the rule is considered a hard case in equity; and although the court cannot refuse its aid against him, yet the plaintiff is by no means a favorite; and, therefore, if he make a slip in his proceedings, the court will not assist him to rectify a mistake. 2 Pierre Wms. 482; Sugden on Vendors, 537, 183. In the bill filed by Smith & Hair, this note is misdescribed in every particular, as to its date, the year in which it was payable, the amount, and the endorsers. And the orders and decrees all refer to the note set out in the bill. The only instance to be found in this State, where *lis pendens* was held to be applicable to any but real property, is the case of Bolling v. Carter, where it will be observed, that the point is neither made by counsel nor considered by the court; but it was assumed to apply to a case of mortgage of a slave. 9 A. R. 923.

There is still another ground fatal to the defence in this

case, even upon the supposition that the doctrine was applicable; and that is, that the Court of Chancery of Sumter had no jurisdiction over the non-resident defendants. Story's Eq. Pl., § 81. The statute conferring jurisdiction, limits it to cases where the "transaction" &c., took place in this State. Holman's Heirs v. Bank Norfolk, 12 A. R. 422; Glover v. Glover, 16 A. R., 447. There is no statement in the bill which brings any of the absent defendants within the limitations of the statute; and it is from an absent defendant it is alleged the plaintiff obtained the note. To provide for the case where an absent or non-resident debtor had effects in this State, a statute was passed in 1846, allowing attachments in chancery to issue against debts, choses in action, &c.; but it expressly provides, that it shall not apply to any "debt due by bill of exchange, draft or promissory note, negotiable and payable in Bank, and not past due, or by bank check or certificate of deposit." Pamphlet Acts, 1846, p. 19. This act is in perfect harmony with the arguments and decisions relied upon. For if the mere filing of a bill would of itself create a *lis pendens*, and condemn the note, why object to its being attached? The legislature has by this prohibition vindicated the policy which gives the freeest scope to commercial transactions.

This objection is properly raised here; as the jurisdiction of a court may be inquired into in every other court where the proceedings of the former are relied on, and offered by the party claiming the benefit of such proceedings. Elliott v. Pearsall, 1 Pet. 341; Lessee v. Hickey, 3 How. 762.

It is insisted, however, that the decree destroyed the negotiability of this note, and that it became a nullity from the time of its rendition. But the decree merely enjoins the defendants from receiving, transferring, &c., the debts mentioned in the bill, and orders, "that the several debtors, parties defendants to this bill, pay over to complainants, &c." There was no cancellation of the note, and the only parties acted on were the defendants to the bill. Now, Winston, who sets up this plea, was no defendant in that bill, and is therefore not bound by that decree, or included in it.

Even if the decree had gone further, and acted upon the note itself, this would not have been notice, so as to bind a

subsequent *bona fide* holder. 2 Sugden on Vend. 284. So where a decree had established, that a certain slave was the separate property of a married woman, this was held to be no evidence, in a contest between a creditor of the husband and the trustee of the wife. Branch Bank v. Hodges, 12 A. R. 123.

Neither chancery decrees nor common law judgments, or executions issued thereon, so bind as to prevent the transfer of negotiable paper to an innocent holder. So our attachments at common law, are held not to apply to negotiable paper. Mills & Co. v. Stewart, 12 A. R. 96; Enos v. Tuttle, 3 Conn. 27; 14 La. 452. And the case of Dove v. Dawson, which seemed to hold the contrary doctrine, was upon a note not negotiable. See Record Book 20, p. 139; 6 A. R. 713.

It is therefore evident that the charge of the court was more favorable to the defendant below, than the law justified. It admitted the application of the doctrine to the case before the court, but declared that there was no evidence to show that Westfeldt had obtained the note from Murdock, after he had been made a party to the bill. It will be seen that the only witnesses examined, Bliss and Russel, give no evidence to this point. The former states that he passed away the assets of the Bank to the assignees, in March, 1848. The statement in the master's report is relied on, to show that the note was in possession of Murdock after the filing of the bill. But this inquiry was not referred to the master, and if it had been, it is no evidence of the fact; as to this case, it would be "*res inter alios acta.*" The proceedings were evidence to show the pendency of the suit; but the fact stated in the answers or reports are not evidence, but must be proved *aliunde.* Greenlf. Evid. § 538–9; Adams v. McMillan, 7 Port. 84.

Again: judgments and decrees are evidence only against "parties and privies." Westfeldt, it is admitted, is no "party;" and whether he was a "privy" to the suit, is the point of litigation.

It is now upwards of two hundred years since Lord Bacon introduced this rule of *lis pendens* into the Chancery Court of England, and no case has yet been decided that invades the great policy which everywhere has thrown its shield over commercial transactions. There is nothing to induce the be-

lief that the Supreme Court of Alabama will differ with the determination made by the learned Kent, that " the safety of commercial dealings requires a limitation of the rule."

GOLDTHWAITE, J.—The note sued on, at the time of the purchase by Westfeldt, was the subject of controversy in the Chancery Court; and the first question is, whether these proceedings operated as notice to him; or, in other words, does the doctrine of *lis pendens* apply to negotiable paper? This is entirely a new question with us; and, so far as we can learn, has never been directly decided by any court. The doctrine, as it prevails at this time, seems to have had its origin in the common law rule which obtained in real actions, where, if the defendant aliened during the pendency of the suit, the judgment in the real action overreached the alienation, and the chancery ordinance of Lord Bacon, which provided " that no decree bindeth any that cometh in *bona fide* by conveyance from the defendant, before the bill is exhibited, and is made no party by bill or order; but when he comes in *pendente lite*, and while the suit is in full prosecution, and without any color of allowance, or privity of court, there regularly the decree bindeth. But if there were any intermissions of suit, or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice." Lord Bacon's Works 2 vol. 479.

From the use of the term " conveyance," we think that the framer of this ordinance had in view its application to real property only, and that it was intended simply to operate as an adoption in the Court of Chancery of the common law rule which we have referred to; and this idea is supported by Mr. Powell, who, in his work on Mortgages, (2 vol. 618) says: " There is no case in which equity has determined the property in goods to be affected by reason of a *lis pendens*, where possession is the principal evidence of ownership, as of personal chattels." Chancellor Kent also, while he admits that the rule is well established, and applies it without hesitation to a sale of bonds and mortgages, as being outside of the ordinary course of traffic, and always understood to be subject to certain equities, (Murray v. Lilburn, 2 John. Ch. 441, 444,) expresses a serious doubt whether it applies to money or com-

mercial paper not due, and some question as to its application to moveable personal property—such as horses, cattle, grain, &c. The Vice Chancellor, in Scudder v. Van Amburgh, 4 Ed. 29, while he "inclines" to the opinion that the rule applied to personal property, admits that the question is not decided. In our own court, in the case of Bolling v. Carter, 9 Ala. 921, the rule was applied to slaves; but the weight of that case as authority is somewhat diminished, by the fact, that the point was not made, and not alluded to by the court. It is, to say the least, highly improbable that a question of this novel and important character should have passed "*sub silentio,*" had the attention of the court been directed to it.

The question though, here, is not whether the rule applies to personal property, but whether it holds as to negotiable paper transferred before maturity. Lord Eldon evidently doubted it in Jervis v. White, 7 Ves. 413, 414; and from the cautious manner in which he expresses himself, in the last paragraph of Hood v. Aston, 1 Russ. 412, more than twenty years afterwards, we do not think he had fully resolved this doubt. The leaning of Chancellor Kent was against it, on the ground that the safety of commercial dealing required a limitation of the rule; and it must be acknowledged that there is great force in the reason. Negotiable paper, representing, as it does in almost all civilized nations, a very large proportion of the commercial operations, and serving, to a great extent, as the representative of money, is justly a favorite of the law, and enjoys immunities and privileges which are extended to no other species of contracts. The tendency of the courts has been to uphold this description of paper, in the hands of the *bona fide* holder, against every species of defence which might exist as between the original parties. The credit and confidence due to it must be impaired, if the buyer was required to examine the courts of every county in the State before he could be sure of his purchase; and such would necessarily be the case, if the doctrine of *lis pendens* applied to it. There are no adjudications to force us to this extremity; the strongest considerations of public policy seem to forbid the extension of the rule to money or bank bills; and we think that commercial paper, as the representative of money, should stand on the same footing in this respect.

Neither does the fact, that an injunction against negotiating the note was in force, destroy its negotiability. We do not understand any of the authorities to go to that length; and the same reasons exist to sustain it in the hands of a *bona fide* holder, as in the case of *lis pendens*. The party, it is true, would be placed by the injunction in a better condition, as the Chancellor could commit for the breach, until the party who negotiated the note had got it back into his possession, or paid the amount due upon it; but the injunction could not operate to destroy the qualities which the law attaches to the instrument itself.

It is, however, urged on the part of the plaintiff in error, that as Westfeldt sues as the endorsee of Bliss, and the evidence shows that he did not become the holder of the note until after the rendition of the decree against Lacy, he is bound by it, as the privy of Bliss, who was a party defendant to the chancery proceeding. It is true, as a general rule, that a judgment or decree is binding on parties and privies; but, technically speaking, there can be no privity, where there is not an identity of interest. 1 Green. Ev. 523 § 190. Usually, as the assignee of a chose in action takes it subject to all the equities, he has precisely the same interest as the assignor; but this is not the case with negotiable paper, taken before maturity, for value, and without notice. The holder, under such circumstances, may have very different rights from the party from whom he received it, and can recover while his assignor could not. This is the case here. Neither Bliss nor Murdock could recover, because they are not *bona fide* holders, while Westfeldt, upon the evidence, must be regarded as such; and in this respect, his interest is not identical with theirs, and he is not bound by the decree.

Our decision upon these points is conclusive of the case, and renders it unnecessary to consider any of the other questions presented in argument.

The judgment is affirmed.

GIBBONS, J., not sitting.