## LEONARD CHASE, ADM'R. v. JAMES SEARLES & AL.

Where a creditor has obtained judgment, and caused execution to be delivered to the sheriff, and the same has been returned unsatisfied for want of property, he may maintain a bill in equity against the debtor and others for the discovery of assets; but neither before nor since the law of 1845, Comp. Stats. ch. 181, secs. 19 and 20, does he acquire any lien by such suit, upon his debtor's property.

It is not multifarious to join in such a bill, as parties defendant with the debtor, several persons to whom he has conveyed distinct parcels of property, out of which the plaintiff seeks satisfaction of his debt, although such persons may have no common interest in the several parcels so conveyed.

Where, after the commencement of a suit of this character, the defendant has transferred several parcels of property to several persons, and the plaintiff wishes to make such persons parties defendant to the proceeding, he must do it by an original bill in the nature of a supplemental bill; and in it he must state the substance of the original bill, or, in other words, must state his whole case against the new defendants, that they may by their answer put it in issue.

In such case, it would not be sufficient to refer to a copy of the original bill delivered to the new defendants when the supplemental bill was served upon them.

In a case like this, the former defendant is directly interested in any decree against the new defendants, and therefore should be made a party to the supplemental bill.

THIS is a bill in equity, and the questions arise upon a demurrer to the bill, and the substance of the pleadings sufficiently appears in the opinion of the Court.

*Morrison, Stanley & Clark*, and *S. N. Bell*, for plaintiff.

*I. W. Smith* and *Perley*, for defendant.

BELLOWS, J. This is in form a supplemental bill, and it states the filing of the original bill, and that on it the defendant Searles was call-

ed upon, among other things, for a full disclosure and statement, under oath, of all his conveyances of property for ten years next before the filing of the bill; that, since the bill was filed, the defendant Searles has made conveyances severally to the new defendants, of sundry parcels of property, with the knowledge, on the part of such new defendants, of the pendency of said bill; and praying that such conveyances may be declared void and the property remain subject to any decree that may be made in the original suit.

To this supplemental bill the new defendants severally demur and each assigns as causes of demurrer:

1. That the supplemental bill is exhibited against these defendants for several distinct matters and causes, in many of which, as appears by the bill, some of such defendants were in no way interested.

2. That the supplemental bill does not set forth the original bill, nor such substantial and material parts thereof as give the information necessary to enable the defendants to answer thereto.

3. That the matters and things introduced by the supplemental bill being subsequent in date to the filing of the said original bill, and material for the original defendant to answer, yet is not said original defendant made party to the supplemental bill and therefore cannot render answer thereto.

4. That the original and supplemental bills are in other respects defective and insufficient.

In addition to these causes of demurrer, Artemas W. Stearns, one of the new defendants, assigns as a cause the following: Because, as to the said note for ten thousand dollars said to be due from T. W. Gillis, it appears by the said supplemental bill that this defendant Stearns does not reside in this State, that no service has been made on him in this State, nor does it appear that the said T. W. Gillis resides in this State, or has any property in this State, and therefore the court has no jurisdiction of the person of this defendant, nor over the said note for ten thousand dollars, or the said T. W. Gillis.

In addition to these causes of demurrer, another has been assigned at the hearing, *on terms.* It is, in substance, the want of equity, even regarding the allegations in the original bill, which is referred to as part of the supplemental bill, and this cause of demurrer having been fully argued at the bar, we propose first to examine it, as its disposition may have some bearing upon other causes of demurrer specially assigned.

The original bill sets out the recovery by the plaintiff's intestate of a judgment against James Searles, the original defendant, the issue of execution thereon, its delivery to a deputy of the sheriff for service, and its return wholly unsatisfied for want of property of the said debtor; alleging that said Searles, at and before said judgment and execution, was possessed of divers parcels of real and personal estate and things in action, and that said real and personal estate and things in action have been granted, transferred, conveyed, assigned, concealed, mortgaged, pledged, sold and arranged by the said defendant Searles, so that satis-

faction of said debt could not be obtained by ordinary process of law. Whereupon the plaintiff, in said original bill, asks for discovery of such property and things in action, and that payment of the said judgment may be decreed therefrom.

After answer by the original defendant, this supplemental bill was filed against parties to whom grants and transfers of such property and things in action were alleged to have been made since the filing of the original bill.

Upon this latter cause of demurrer, the question raised and argued by counsel is, whether, by the commencement of the original suit, the plaintiff had acquired a lien, or a priority or preference, in respect to the assets of the judgment debtor. The plaintiff comes into this court upon the ground, that, having obtained a judgment against the original defendant, taken out, and delivered to the sheriff an execution thereon, which was returned unsatisfied for want of property, he has exhausted his remedies at law, and therefore seeks the aid of equity. To such aid he is clearly entitled, not only upon general principles of equity jurisdiction, but by the express provisions of the act of July 2, 1845, ch. 234, (C. S. p. 436, secs. 19 and 20.)

That statute provides that any creditor, whose execution has been returned unsatisfied, may bring his bill in equity against the debtor, and "any other person, to compel the discovery of any property, money, or thing in action due to him, or held in trust for him; and to prevent the transfer of any such property, money, or thing in action, or the payment or delivery thereof to the defendant"; and section second provides that the "court shall have power to compel such discovery, and to prevent such transfer, payment, or delivery, and to decree satisfaction of the sum remaining due on such judgment, out of any money, property, or things in action belonging to the defendant or held in trust for him" (with certain exceptions not necessary to be stated,) "which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not."

This is understood to be a substantial copy of the New York statute of 1829, except that in the latter the term *property* is qualified by the word *"personal"* prefixed, so that the jurisdiction of courts of equity there, under that statute, would seem to be confined to personal property. However, it appears that the jurisdiction of that court had been well established long before that statute, and in the broadest terms; and, both before and since, courts of equity have been in the constant habit of decreeing satisfaction out of equitable interests in real estate, such as equities of redemption and the like. *Farnham* v. *Campbell*, 10 Paige Ch. 601; *Storm* v. *Waddell*, 2 Sandf. Ch. Rep. 510 and 514; *McDermott* v. *Strong*, 4 Johns. Ch. 687. So, in New Hampshire, the same jurisdiction was held to exist before the passage of our statute of 1845. *Tappan* v. *Evans*, 11 N. H. 327; *Bay State Iron Co.* v. *Goodall*, 39 N. H. 223.

It is clear, then, that, neither in New York nor New Hampshire, did the statute confer any new jurisdiction so far as respects the right to discovery and relief out of the equitable assets of the debtor; and it is

probable, that, in both States, the law was passed to remove any doubts that might be supposed to exist in regard to the power, or some branch of it.

The question then is, whether, by bringing such suit in equity without any previous lien, and without specifying any particular property, the creditor, under our laws, acquires a lien upon all or any of the debtor's assets.

In examining this question, it may be useful to consider the general views which have governed our legislation upon this subject; and we think it must be conceded, that, while it has been the settled policy of the law to subject all the debtor's assets to the payment of his debts, and to confer upon creditors adequate means of reaching such assets, yet this has been sought to be accomplished, not by a general lien created by the rendition and docketing of a judgment, or the issue and delivery of an execution thereon against the goods and chattels of the debtor, but by an actual attachment or seizure, or process of foreign attachment, designed to create a specific lien upon a particular fund or parcel of property; and it will be observed that these provisions were designed to enable the creditor to reach every species of property not specially exempted by statute, and by methods the most simple and direct. These statute provisions have always been regarded as having superseded entirely the common law liens by judgment and issue of execution; not by any special enactment to that effect, but by necessary implication from the provisions by which the mode of acquiring and preserving liens is pointed out.

These liens at common law, or rather under the English statute of 4 and 5, Wm. & Mary, c. 20, were general in their character; and, upon the same principle that they are held, by implication, to be abrogated by our statutes, it might be urged with great force that similar general liens upon equitable property, created by proceedings not aimed at any specific fund or property, were also abrogated by the provisions enabling creditors to reach such property at law, either by attachment or seizure of stocks, equities of redemption, and the like, or by means of the trustee process. But, however this may be, it may well be urged, that, inasmuch as the policy of our law favors specific liens created by actual seizure or its equivalent, and not those of a general character acquired by judgment or the issue of execution, it ought to require a distinct expression of the legislative will, to justify so great a departure from that policy and the settled usages under it, as to give to the mere commencement of a creditor's suit in equity, a general lien upon all the debtor's property throughout the State, or even upon all his equitable assets.

The argument in favor of such a change is derived mainly from the fact that our statute of 1845 is substantially like the New York statute; and that such liens, at the time of the passage of our law, were recognized in that State and had been for many years, and even long prior to their statute. If such liens had their origin in New York, under their statute, there would have been much more force in the argument; but, as we have already seen, such was not the fact. *Storm* v. *Waddell*, 2 Sandf. Ch. 510 and 514, and cases cited. On the contrary, it was the

natural result of their policy, which favored general liens by judgment and execution. In examining this argument, it may be useful, in order to estimate its force and applicability, to consider the doctrine of the New York courts upon the subject of liens of this sort, as it stood when our statute was passed in 1845, and also to mark its limitations.

As has been stated before, the creditor acquired by a judgment a lien upon all his debtor's lands in the county where such judgment was docketed, but he was empowered to have it docketed in every county in the State, *Haverly* v. *Becker*, 4 Comst. Rep. 169; and this lien continued, as against even a *bona fide* purchaser, for the space of ten years after the docketing of the judgment. 4 Kent's Com. 494, *435. This doctrine was adopted from the English statute of 4 and 5, Wm. & M. c. 20, improved by the statute of 1 and 2 Vict. c. 110, which requires a memorandum of the judgment to be entered in a book in alphabetical order, and a fresh memorandum thereof to be made after five years from the first entry. 4 Kent's Com. 6th Ed. 494, *435, note c. So, too, by the issue and delivery of an execution to the sheriff, the judgment creditor acquires a lien upon all the goods and chattels of the debtor liable to execution at law, *Haggerty* v. *Wilber*, 16 Johns. Rep. 286, *Hendricks* v. *Robinson*. 2 Johns. Ch. 312; it being provided by the New York statute that no execution should bind the property in goods but from the delivery to the sheriff, and in this respect it differs from the English law.

Upon the return of an execution, issued both against the real and personal property, unsatisfied, the creditor might file his bill in equity for the purpose of reaching the debtor's equitable assets, upon the ground that he has exhausted his remedy at law. Upon filing the bill, an injunction is obtained and served with the subpœna to restrain the defendant from disposing of any of those assets until the further order of court; and regularly a receiver is appointed who is vested with all such property, or a portion particularly specified, sufficient to pay the creditor's debt and costs, and the debtor is required to assign and deliver the same to the receiver under the direction of a master; and thereupon, unless the debtor can make defence to the creditor's bill, a decree is entered that the receiver, out of the assets in his hands, pay the plaintiff's judgment, interest and costs. If there are several creditors' suits, each complainant is paid according to his priority, as ascertained by the commencement of their respective suits.

The appointment of a receiver is not, however, indispensable to entitle the creditor to priority; for it is understood that his priority, in respect to equitable assets, is established by the service of the process. In respect, however, to property liable to be taken at law, no lien is acquired by the mere service of process; so that, if before the appointment of a receiver, or an order of sequestration, a seizure be made by another creditor upon execution, of property liable to be taken at law, it will be good; for, until such appointment or order, the title is held not to be equitably divested. *Lansing* v. *Easton & al.* 7 Paige Ch. 364; *Albany City Bank* v. *Schermerhorn*, 1 Clark, 297.

This is a general outline of the proceedings in New York by a credi-

tor's bill, when his remedy at law is exhausted, as given in *Storm* v. *Waddell*, 2 Sandf. Ch. 512, which was decided in 1845,—the same year as the passage in New Hampshire of the law in question; and it is settled there that such creditor may bring suit for his own benefit alone, without making other creditors parties, though standing in the same situation, or he may join such other creditors, or sue in behalf of himself and such others as may choose to come in, if standing in the same situation. *Edmeston* v. *Lyde & al.* 1 Paige Ch. 637 ; *Wakeman* v. *Grover*, 4 Paige Ch. 23.

This proceeding in New York and the priority obtained thereby flow naturally from their policy of favoring general liens upon legal assets by judgments and executions. It is, indeed, but an extension of an established policy to a species of property that is not affected by the lien created by a judgment, or the issue of execution, at law; and accordingly, as a lien upon goods and chattels liable to be taken at law, is acquired by the delivery of an execution to the sheriff, so a similar general lien upon the debtor's equitable assets,on the return of such execution unsatisfied, may be obtained by bringing a suit in equity for that purpose.

In New Hampshire, there is no such policy. On the contrary, our policy is to substitute for general liens, those of a specific character, and so ordered as to cause as little inconvenience to the debtor as possible and to furnish the means of notice to other creditors and purchasers by copies left at town clerks' offices, the offices of clerks of corporations, by actual service upon trustees, and, in case of movable property, by a change of possession. And, by our law, either by attachment or the trustee process, a specific lien may be acquired upon most, if not all, kinds of equitable assets, which, in New York, may properly be the subject of a creditor's bill. In New Hampshire, by express provisions of the statute, a creditor may attach an equity of redemption or any interest in real estate including a right by contract to receive a conveyance; and he may also attach shares in a corporation, perishable property, and the franchise of a corporation; and it has long been settled that money is liable to attachment and execution;—add to this the power,by foreign attachment of reaching all the goods, chattels, rights and credits of the debtor in the hands of a third person, including now, even negotiable paper, and it can hardly be said that the remedy of the creditor at law is *exhausted* until the assets of the debtor are also *exhausted*. If, then, by equitable assets be meant only such as cannot be reached by proceedings at law, it is obvious that in this State there is but little occasion for the interposition of equity, except in aid of proceedings at law, where a specific lien has already been acquired. If this be so, it affords a strong argument against the introduction of a doctrine which, under the pretext of giving aid to a creditor who had no remedy at law, would enable him to obtain a general lien upon all the debtor's assets, both legal and equitable, and thus to override all our statute provisions for obtaining specific liens.

It is true, that in New York the appropriate office of a creditor's bill is to enable the complainant to reach the debtor's equitable assets ; and

a lien is created upon assets that may be reached at law, only after the appointment of a receiver, or an order of sequestration; and yet where the bill seeks for discovery of assets generally, and legal assets are discovered, the bill will be retained for relief, either by directing an execution at law in the case of real estate, or directing the personal assets to be converted into money by the receiver or master, and the debt discharged. In this way a *lis pendens* would be created, which, in New York, would affect all the debtor's assets of every description, whether liable at law or not. *Leroy* v. *Rogers*, 3 Paige Ch. 236; *Chautauque Bank*, v. *White*, 2 Seld. 236.

Such being the comprehensive character of the lien as now. claimed, we think it would require much clearer manifestations of legislative will than we find in this act, to justify a construction that should work such a radical change in the policy of our attachment laws—a change that would enable a creditor, by means of a bill in equity not aimed at any particular property, to establish a lien upon all the debtor's property, both real and personal, in all parts of the State, stop his business, deprive him of the use of his means for present support, and compel all other creditors to await the final decree in such suit. With us, there is little occasion for the adoption of that policy. In the comparatively few cases which are beyond the reach of the ordinary legal process, and where the creditor has legitimate occasion to go into equity, he may ordinarily accomplish his purpose by an injunction to restrain the debtor from disposing of his assets, and, if necessary, the appointment of a receiver to take possession of so much of his assets as might be needed for the creditor's security. In this way, by proper modifications of the injunction, and directions to the receiver, a reasonable security may be obtained with due regard to the interests of the debtor and other creditors, and without wholly tying up the debtor's hands, or exposing *bona fide* creditors and purchasers to the hazard of serious loss through the harsh application of the doctrine of *lis pendens*—a doctrine which in its ordinary application is often productive of great hardships, and ought not to be extended without strong necessity. See *Parks* v. *Jackson*, 11 Wend. 454.

It is also worthy of consideration, that the value of such a doctrine to the creditor himself is greatly diminished by the fact, that it is held not to be applicable to commercial or negotiable paper, upon the ground that courts are inclined to uphold this description of paper in the hands of a *bona fide* holder, against every species of defence that may be urged. This is expressly so decided in *Winston* v. *Westfeldt*, 22 Ala. Rep. 760; where Goldthwaite, J., in an able opinion, reviews the cases. Among others, he cites 2 Powell on Mort. 618, where he lays it down that "there is no case in which equity has determined the property in goods to be affected by means of a *lis pendens*, where possession is the principal evidence of ownership as of personal chattels"; and Goldthwaite is of the opinion that the ordinance of Lord Bacon, in which the doctrine originated, was intended to apply only to real estate. But, without deciding that the rule does not apply to goods and chattels, he holds that the strongest considerations of public policy forbid the exten-

sion of the rule to money or bank bills, or to commercial paper, which is the representative of money, and ought to stand on the same footing.

In *Murray* v. *Lilburn*, 2 Johns. Ch. Rep. 441, Chancellor Kent holds the doctrine of *lis pendens* to be applicable to bonds and mortgages, because he says that they are not usually the subject of ordinary commerce; but he says, he is not prepared to say that it would affect cash, negotiable paper not due, cattle, grain, &c.; and he says that the safety of commercial dealing would require a limitation of the rule. In *Jervis* v. *White*, 7 Ves. 413, Lord Eldon seems to regard it as not settled, that *lis pendens* applies to negotiable securities, and this case was decided in 1802. In England, the doctrine of *lis pendens* cannot be said to have been extended to creditors' bills of the character now in question; for, although there were formerly decisions to the effect that a bill in equity might be sustained to reach equitable assets, yet now the prevailing current of authority is apparently the other way. In *Bayard* v. *Hoffman*, 4 Johns. Ch. 450, the cases on both sides are cited and considered. See, also, *Hadden* v. *Spader*, 20 Johns. 554. Both of these cases sustain the earlier English cases, the leading one of which is *Taylor* v. *Jones*, 2 Atk. 600, decided in 1743, and followed by *King* v. *Dupine*, cited in note to *Taylor* v. *Jones*; *Horn* v. *Horn*, Amb. 79, and *Patridge* v. *Gopp*, Amb. 596. On the other side, the leading case is *Dundas* v. *Dutens*, 1 Ves. Jr. 196, decided by Lord Winslow in 1790; and see Sumner's notes to that case, p. 190, note b., and on p. 200, note 2, where it is said that the doctrine of *Dundas* v. *Dutens* has been recognized in many subsequent cases; among them are *McCarthy* v. *Goold*, 1 Ball and Beat. 389; *Grogan* v. *Cooke* 2 Ball and Beat. 233; see also *Caillaud* v. *Estwick*, 1 Anst. 381, and 9 Ves. 189 and 10 Ves. 368.

Whatever may be the preponderance of authority on this question, it is apparent that there has not been in England for a long time any occasion for applying the *lis pendens* in suits of the character now before us. In one case, *Edgell* v. *Haywood*, 3 Atk. 352, decided in 1746, shortly after that of *Taylor* v. *Jones*, it was applied. There a judgment creditor, after having delivered his execution to a sheriff to levy the debt out of a legacy given to the debtor, brought his bill in equity against the executor to cause him to admit assets or to pay the plaintiff's debt out of the legacy; and satisfaction was decreed out of the testator's estate, it being held that the legacy was a charge upon the real estate. Lord Hardwicke held, that, in such case, after judgment, and even after a *fi. fa.*, an assignment by the debtor *bona fide* and for a valuable consideration and without notice would be good; but after "a bill brought and a *lis pendens* created as to this thing, such an assignment would not prevail." Beyond this we are not aware of any application of this doctrine to cases like the one before us, in England; and even if it were otherwise, it would not, for the reasons already suggested, bear with much weight upon the question in New Hampshire, for the reason, that, in England as well as in New York, the policy of general liens by judgments and issue of execution is recognized.

As illustrative of the extent of the change which the adoption of this doctrine would introduce, it may be borne in mind that creditors and purchasers have hitherto ordinarily had no occasion, while investigating the titles of debtors and venders, to search the records of the courts, but only the registry of deeds, and the town clerk's records; while, with the adoption of the doctrine in question, a search into the records of the courts in every county in the State would become a familiar necessity— a precaution for which no previous training of our citizens has prepared them. Again, it may properly be urged that this doctrine is not only opposed to the policy of our State in respect to general liens, but to that policy universally cherished by courts of equity which favors an equal distribution of the debtor's assets among his creditors.

With these views we are brought to the conclusion that no lien was acquired by the commencement of this suit in equity, and therefore that a case is not stated by the supplemental bill, even if the allegations in the original bill be deemed a part of it, that entitles the plaintiff to relief.

The first cause of demurrer specially assigned is, that the supplemental bill is multifarious. In *Abbot & al.* v. *Johnson & al.*, 32 N. H. 9, the subject of multifariousness was carefully considered, and it was there held that a bill by two plaintiffs for relief against the act of the defendants was not multifarious, because the payments by the plaintiffs in consequence of such act were separate and distinct, and not joint. The rule laid down in *Ward* v. *Duke of Northumberland*, 2 Anst. 469, that "unconnected parties may be joined in one suit when there is a common interest among them all, centering in the point in issue in the cause," is recognized in *Abbot* v. *Johnson*, as the rule generally approved in the American courts.

In *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139, Chancellor Kent recognizes this rule and says, p. 156, that "the principle to be deduced from the case cited, is, that a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct." So Judge Story, in his Equity Pl., sec. 284, lays it down, that "a bill is not to be treated as multifarious because it joins two good causes of complaint, growing out of the same transaction, where all the defendants are interested in the same claim of right, and where the relief asked for in relation to each is of the same general character." In *Dimmock* v. *Bixby*, 20 Pick. 377, it is held that a demurrer for multifariousness "will hold only where the plaintiff claims several matters of a different nature, and not where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights." So it is laid down by Lord Redesdale; see Story Eq. Pl. sec. 530, note 6, and Mit. Eq. Pl. by Jeremy 181, 182, notes a. and 6. In Story Eq. Pl. sec. 533, it is said that "the result of the principles to be extracted from the cases on this subject seems to be, that, where there is a common liability in the defendants, and a common interest with plaintiffs, different claims to property, at least if the subjects are such as may, without inconvenience, be joined, may be united in the same suit."

There cannot, however, be deduced from the cases any rule of universal application, but much must be left to the discretion of the court in particular cases. Story's Eq. Pl., secs. 284, 530, 539; *Abbot* v. *Johnson*, 32 N. H. 26. It will be observed also that the same rules apply to the joinder of plaintiffs as of defendants. Story's Eq. Pl., sec. 279; *Abbot* v. *Johnson*, above cited. In respect to plaintiffs, the cases are numerous where they have been permitted to join, although their interests were several; as in the cases of judgment creditors, sureties who have severally paid the debts of their principal, stockholders in a corporation, commoners and parishioners in certain cases, (see Story's Eq. Pl., sec. 285,) and other cases of the like character; and the same general principles apply to defendants. So it has been held that a demurrer could not be maintained to a bill by seventy-two underwriters to restrain several actions upon different policies of insurance upon different ships, all owned by the same persons. *Kensington* v. *White*, 3 Price's Rep. 164; *Irving* v. *Vienna*, McCall & Young's Rep. 563; and this principle was affirmed in *Mills* v. *Campbell*, 2 Young & Coll. 389, 396 and 7; see Story's Eq. Pl. sec. 537, and note.

The same rules have been applied in the case of defendants. In *Fellows* v. *Fellows*, 4 Cow. 682, where it was charged that the plaintiff, having brought a bill in equity against John Fellows, the respondent, apprehending that the decree would be against him, entered into a secret and fraudulent combination with his sons and son-in-law, and conveyed to them severally and without consideration, certain property; that a decree was rendered against the said John Fellows, and execution issued and returned unsatisfied for want of property, and this bill in equity was brought against these grantees to set aside these conveyances. To this the defendants demurred severally, and one of these, William Fellows, assigned for cause of demurrer multifariousness, and also answered and denied all combination with the other defendants. The court held, that, laying aside the charge of combination, as not admitted, the case must be considered as falling within that class of cases where there is a common interest among all, centering in the point in issue in the cause, and the court, Woodworth, J., refers to Lord Redesdale's opinion in *Whaley* v. *Dawson*, 2 Sch. and Lef. 370, to the effect that where there has been a *general right* in the plaintiff covering the whole case, although the rights of the defendants may have been distinct, demurrers for multifariousness have been overruled; and this view is adopted by Woodworth, J., who says that the court proceeds on the ground of preventing multiplicity of suits, where one general right is claimed by the plaintiff against all the defendants.

The same doctrine is fully sustained in *Boyd & al.* v. *Hoyt & al.*, 5 Paige Ch. Rep. 65, which was a creditor's bill to reach the property of a judgment debtor, transferred fraudulently to two or more persons, holding different portions of it by distinct conveyances; and it was held that such persons might be joined. The Chancellor lays it down, that, "where the object of a suit is single, but different persons have or claim separate interests in distinct or independent questions, all connected with and arising out of the single object of the suit, the complainant

may bring such persons before the court as defendants; so that the whole object of the bill may be obtained in one suit and to prevent further unnecessary and useless litigation."

These cases are directly in point, and, if good law, are decisive of this case. *The Mayor of York* v. *Pilkington & al.*, 1 Atk. 282, is of the same character. There the suit in equity was brought to quiet the plaintiff in his right of fishing in the river Ouse, and he was permitted to join as defendants two or more persons who claimed several rights as lords of manors, or occupiers of adjacent lands. The same principle is also recognized in *Brinkerhoff* v. *Brown*, 6 Johns. Ch. Rep. 139; and in several cases cited and examined in *Abbot* v. *Johnson*, 32 N. H. 27, 28 and 29, and which are in point.

In the case before us, the right or claim of the plaintiff is the same in respect to all the defendants, that is, he claims as the judgment creditor of the original defendant Searles, and he seeks to set aside all these conveyances made by the same defendant, in order to accomplish a single object, namely, the satisfaction of his judgment out of the property so conveyed; and we think the case comes clearly within the principle of *Boyd & al.* v. *Hoyt & al.* and other cases before cited; therefore this ground of demurrer is not sustained.

It is contended, also, that the supplemental bill is defective, because it does not state the substance of the original bill; and the question is, whether, in this case, it was necessary that it should. It is laid down in Adams' Eq. 414, that the frame of a supplemental bill so termed, or one which is original in the nature of a supplement, is similar in principle to that of an original bill. It states the filing of the former bill and recapitulates so much of its statement as is required to show the bearing of the supplemental matter, coupling with such recapitulation, if the bill be original in the nature of a supplement, a substantial averment that the statement is true. It then states the original prayer for relief, the proceedings in the suit, and the supplemental matter, and concludes with the appropriate prayer for relief, unless it be for discovery alone. Brightly's Eq. Jur. 584; Story's Eq. Pl., sec. 343; 3 Daniell's Ch. Pr. 1675; Mit. Eq. Pl. 69; 2 Mad. Ch. 525.

These authorities lay down the rule somewhat broadly, as applicable to all supplemental bills; whereas there is a class of supplemental bills which operate merely as an amendment of the original bill; designed to remedy some defect in its structure, by stating matter that ought to have been stated before; or by bringing in a party that ought to have been made a party before; in which case the prayer should be that the new party, if a defendant, should answer the original bill. In neither case can it be necessary, in the supplemental bill, to restate the matter of the original bill; for, even as to the new defendant, he becomes to all intents and purposes a party to the original bill, and may make answer and put in issue its allegations as if originally made a party. This, in truth, is but another form of amending the original bill after it has passed the stage when amendments are ordinarily made in the usual mode, and the effect is substantially the same. See *Thorn* v. *Germand*, 4 Johns. Ch. 363; *Shephard* v. *Merrill*, 3 Johns. Ch. 422; *Good-*

*win* v. *Goodwin*, 3 Atk. 370; *Dormer* v. *Fortescue*, 3 Atk. 132; *Ensworth* v. *Lambert & al.*, 4 Johns. Ch. 604; *Mc Gown* v. *Yerks & al.*, 6 Johns. Ch. 450; *Harrington* v. *Slade*, 22 Barb 161; *Wilkinson* v. *Fowkes*, 12 Law and Eq. 184.

Some of these cases lay down the rule broadly, as if applicable to all supplemental bills; and if by that is meant supplemental bills simply, it may be correct. There is, however, a class of bills denominated original bills in the nature of supplemental bills, that partake of the character mainly of original bills, although, from their relation to the previous suit, it is just and reasonable that some benefit from the former proceedings should be had.. 3 Daniell's Ch. Pr. 1685. As, when, by by the happening of some event subsequent to the filing of the original bill, it becomes necessary to bring in a new party, who, by such event, has become alone interested, and yet does not derive such interest from the former party; as by the determination of an estate tail, and the vesting of a subsequent remainder in possession. Story's Equity, sec. 350, and cases cited. In such case the benefit of the suit against the person becoming entitled by this event, must be obtained by an original bill in the nature of a supplemental bill; although, if the defendant, whose interest was thus determined, was not the sole defendant, the new bill is to be regarded as supplemental to the rest of the suit. Ibid. sec. 350. So it is laid down, that, if the plaintiff's whole interest is transferred by bankruptcy or alienation, *pendente lite*, the benefit of the proceedings cannot be obtained by an ordinary supplemental bill, but it must be, by an original bill in the nature of a supplemental bill. 3 Daniell's Ch. Pr. 1666, citing Lord Redesdale's Treatise, p. 64. So is Story's Eq. Pl., sec. 349; Mit. Eq. Pl. 65. It is the same when the plaintiff assigns his whole interest, *pendente lite*. The difference between a new supplemental bill and an original bill in the nature of a supplemental bill, in respect to their frame and structure, is somewhat material.

In regard to the former, it would seem to be unnecessary to set out the original bill; but, in respect to an original bill in the nature of a supplement, the rule is otherwise, requiring a recapitulation of so much of the former bill as is necessary to show the bearing of the supplemental matter. Adams' Eq. 414; see Brightly Eq. Jur. 584; 3 Dan'l Ch. Pr. 1675; Story's Eq. Pl. sec. 343; *Vigers* v. *Audley*, 9 Sim. 72, before cited.

So far there would seem to be no difficulty; but it is not always easy to determine whether a bill be supplemental merely or original in the nature of a supplement, as there seems to be no general rule deducible from the authorities which define them. 3 Dan'l Ch. Pr. 1667. Indeed, the distinction between them is often lost sight of in the discussions concerning them in the books: Story's Eq. Pl. 345 ;. where it is said that the most prominent distinction seems to be that a supplemental bill is properly applicable to those cases only where the same parties, or the same interests, remain before the court; whereas an original bill in the nature of a supplemental bill is properly applicable where new parties with new interests arising from events since the institution of the

suit, are brought before the court.    See also Cooper's Eq. Pl. 75, 76. Whether the latter applies to cases where a new party is to be brought in, having the same title as that possessed by a former party and derived from him, *pendente lite*, is not distinctly stated in this passage, nor do we find it any where clearly settled.    See 3 Dan'l Ch. Pr. 1667.

If, in such case, the new defendant has such relations to the former defendant that he would be bound by the previous proceedings, there would seem to us some ground for saying that a mere supplemental bill was sufficient; but in a case where a *lis pendens* is not created against the new defendant, the plaintiff should, as it would seem, proceed by an original bill in the nature of a supplemental bill; for, in such case, although the defendant may derive his title from a former defendant, *pendente lite*, yet, in respect to the previous proceedings, he stands much like a defendant whose title is derived from another, that is, he is not bound by those proceedings, or by a decree therein; and there is the same reason for requiring the plaintiff to state the substance of the original bill in the supplement, or, in other words, to state his whole case against the new defendant, as if it were an original bill, that such defendant by his answer might put it in issue.

In the case before us, the new defendants are brought in, that their titles to a portion of the property at which the original bill was aimed, may be adjudicated; but they cannot properly be called upon to answer the entire bill which is designed to reach all the assets of the original defendant, who is still a party; and if it be necessary to state the whole case in the new bill, where the new defendant does not claim under a former defendant, as is clearly the case, it is equally necessary in a case like this where the new defendant is not bound by the previous proceedings.    We are of the opinion, therefore, that the supplemental bill in this particular is defective—the *reference* to the original bill not being, as we think, sufficient.    The 44th rule provides that every bill and answer shall be expressed as concisely as may be, and no deed, will, agreement, or other writing shall be set forth at length, or annexed to any bill or answer, but so much of either as is material and no more shall be inserted."    Under this rule the delivering of a copy of the original bill to the new defendants and the reference to it in the supplemental bill can have no effect, and the case must stand as if the substance of the original bill was not set forth.

The third cause of demurrer is, that the original defendant is not made a party to the supplemental bill.    The decision of this question must depend upon this, whether a decree against the new defendants will affect the interests of the original defendant or not.    If it will, the latter should be made a party, otherwise not.    Such is the doctrine laid down by Lord Redesdale in his Treatise, 3d ed. p. 59.    So are *Wilkinson* v. *Fowkes*, 12 Law & Eq. 184; S. C. 9 Hare, 193; Adams' Eq. 414; Mit. Eq. Pl. 70.

Is, then, the original defendant interested in the decree that may be made against the new defendants?    The purpose and object of the supplemental bill is to set aside certain conveyances and transfers made by the original defendant to the new defendant, and to apply the property

so conveyed and transferred to the satisfaction of the judgment recovered by the plaintiff's intestate. In that decree, we think the former defendant is directly interested, so that if this were an original bill there could be no doubt that he ought to be made a party. If these conveyances and transfers are set aside, he must lose the advantage of them, and surely we cannot say that his interest could not be affected by it.

We are therefore of the opinion, that, for this cause, the supplemental bill is defective and must be amended.

The additional cause of demurrer assigned by A. W. Stearns, we have not considered, and it may not perhaps be necessary; but, upon the second and third causes, and the cause assigned *ore tenus* at the hearing.

*The demurrer is allowed.*