Ludie C. Moore filed a declaratory judgment action against Iva Nell Strickland and Alabama Farm Bureau requesting the court to determine the rights of the parties under an insurance policy issued by Farm Bureau to Moore. Prior to this action, Strickland had obtained a $25,000 judgment against Moore fornegligently knocking her through a plate glass window on the front of J.V.'s Lounge in downtown Mobile. Moore's policy covered him up to $25,000 for bodily injury caused by him, except for "bodily injury or property damage which is eitherexpected or intended from the standpoint of the insured." (Emphasis added.) The policy also provided that the
 ". . . company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, . . ."
Farm Bureau, upon notification of the Strickland-Moore suit, declined to defend, contending that the injury was intentionally caused and not covered by the policy. In this action (Moore's suit against Farm Bureau for declaratory judgment), Farm Bureau contends that it is not collaterally estopped to assert non-coverage because (1) the issues in the two actions are not the same, (2) an inherent conflict of interest existed between itself and Moore, and (3) a defense of fraud and collusion is not affected by the doctrine of res judicata.[1] The lower court thought otherwise and granted summary judgment in favor of Moore. We reverse.
In the Strickland v. Moore law suit, the original complaint alleged in Count 1 that Moore committed an assault and battery on Strickland and in Count 2, that Moore negligently bumped Strickland causing her to fall through the window. Farm Bureau investigated the claim and concluded that Moore had intentionally knocked Strickland into the window. Without going into the details we note that in opposition to the motion for summary judgment submitted by its co-defendant, Strickland,[2]
Farm Bureau submitted the affidavit of Officer Smith of the Mobile City Police Department.
 ". . . She told me that she had been in the J V Lounge and while there met a man by the name of Ludie Moore. During the course of drinking and talking she and Ludie Moore began arguing, using profanity. Moore got up and left going out the front door. She told me that she followed him out. They continued arguing on the street for a few minutes and then Moore grabbed her bodily shoving her through a plate glass window in front of the place, pushing her head through it.
 "Ludie Moore was arrested on the scene of the incident and charged with assault and battery. Sometime afterwards the case against Ludie Moore came up in the Municipal Court, City of Mobile, at which time it was nol prossed. On the morning of the Municipal Court hearing Nell Strickland informed me
 that she did not want to prosecute. When I inquired as to why, she stated that she had been informed by someone whose name she did *Page 1115 
not mention that if she did not prosecute, that Ludie Moore's homeowner's insurance would pay for her injuries and subsequently she did not want to testify and did not and the case was nol prossed." T. 133-134.[3]
The day of the trial Strickland withdrew Count 1 alleging assault and battery, leaving only Count 2 in negligence. At the same time she withdrew her demand for a jury trial. During the trial Moore was examined and cross-examined as to whether he "expected or intended" the injuries. In the closing argument, Strickland claimed to have proven $70,000 to $80,000 damages, but asked for $24,000; she had sued for $50,000.
This case presents a difficult first impression question. Moore's negligence has been litigated once. Farm Bureau, as Moore's insurer, had an opportunity to defend and at first glance would appear to be bound by the result. Indemnity Co. ofAmerica v. Bollas, 223 Ala. 239, 135 So. 174 (1931). Such a view is presented in Miller v. United States Fidelity Guaranty Co., 291 Mass. 445, 448-449, 197 N.E. 75, 77 (1935):
 "The grounds on which liability has been imposed upon the insured are to be determined from an investigation into the matters decided in the action which established that liability and not from facts subsequently developed in an action by the insured against the insurer. This is clear from the language of the policy itself wherein the defendant agreed to pay, not such damages as might be imposed upon the plaintiff for bodily injuries which were in fact accidental, but all sums which the assured should `become liable to pay as damages imposed upon him by law for bodily injury accidentally sustained. * * *' The defendant further bound itself by the policy to defend 'any claims, suits or other legal proceedings alleging such injuries and demanding damages on account thereof, although such claims, suits, legal proceedings, allegations and demands are wholly groundless, false or fraudulent.' The object of the policy is protection against law suits and legal liability. This object could not be attained if the insured were compelled to try over again in an action against the insurer the same issues upon which he has been found liable in the original action. Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy. [Citations omitted.]"
Yet, Farm Bureau was caught between a rock and a hard place, as its interests were in one way adverse to those of the insured. Its interests could be protected by proving that the injuries were intentionally inflicted while Moore's liability would be increased by such proof. See Glens Falls Insurance Co.v. American Oil Co., 254 Md. 120, 254 A.2d 658 (1969).
 "`It is true, as a general rule, that a judgment or decree is binding on parties and privies; but, technically speaking, there can be no privity, where there is not an identity of interest.' Winston v. Westfeldt, 22 Ala. 760, 771, 58 Am.Dec. 278." Rowe v. Johnson, 214 Ala. 510,512, 108 So. 604, 605-606
(1926).
Moreover, even if Farm Bureau decided to defend Moore with the full intent of protecting Moore's interests, Moore could legitimately have preferred independent counsel.
We also have problems deciding exactly what was decided in the Strickland v. Moore decision other than the extent of Moore's liability. The assault and battery count was dropped immediately before trial (without notice to Farm Bureau). Does that, by deduction, mean that an intentional tort was not committed? Is a jury, or in this case a judge, going to say that Moore is *Page 1116 
not liable because he intended the act, a possibility not within the liability charged? See Burd v. Sussex Mutual Ins.Co., 56 N.J. 383, 267 A.2d 7, 10 (1970).
Assume for the moment that the assault and battery count was left in the complaint and a jury awarded a general verdict. Is the insurance company liable?
Assume further that the negligent count is dropped leaving only the assault and battery count, and Moore again loses. Would Farm Bureau automatically be excluded from liability? Possibly not. While Moore may have intended to push Strickland, he may not have intended or expected the bodily injury.Hartford Fire Insurance Co. v. Blakeney, 340 So.2d 754 (Ala. 1976); Armstrong v. Security Insurance Group, 292 Ala. 27,288 So.2d 134 (1973).
 ". . . The exclusion of intentional injury is somewhat unique with respect to the problem of coverage. The usual coverage issue depends upon status, time, place, identity of the instrumentality, and the like. But in the case of the exclusion of intentional injuries, the injuries, which otherwise are within the coverage, are excepted therefrom because of a state of mind, and indeed a state of mind which the injured claimant may but need not allege or prove, to prevail against the insured. Since a claimant who charges intentional injury may thus recover even though the intent to injure is not proved, his complaint, on its face, is simultaneously within both the basic covenant to pay and the intentional-injury exclusion from that coverage." Burd v. Sussex Mutual Ins. Co., supra, 56 N.J. at 393, 267 A.2d at 12.
For the doctrine of collateral estoppel to apply, as distinct from res judicata which is not at issue in this case (seeWebster v. Gunter, 336 So.2d 170 (Ala. 1976), Almon, J., concurring specially), inter alia, the identical point must have been in issue, and the judgment must have been rendered on that point. Ivey v. Wiggens, 271 Ala. 610, 126 So.2d 469
(1961). Note State Farm Mut. Auto Ins. Co. v. Birmingham Elec.Co., 254 Ala. 256, 48 So.2d 41 (1950) though it turns on identity of parties. The question of whether the injury was expected or intended was not the issue in Strickland v. Moore
and the judgment was not rendered on that point. Moreover, the concept of privity assumes identity of interests, and such was not the case. Rowe v. Johnson, supra.
The Miller case, supra, appears to be based on a contractual duty to defend as well as collateral estoppel. Other courts have based their decisions in similar circumstances entirely on the contractual duty to defend as distinct from the duty to pay. E.g., Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104,419 P.2d 168 (1966); Lowell v. Maryland Casualty Co.,65 Cal.2d 298, 54 Cal.Rptr. 116, 419 P.2d 180 (1966); Missionariesof Co. of Mary, Inc., v. Aetna Cas. S. Co., 155 Conn. 104,230 A.2d 21 (1967). However Gray and Lowell assumed that "if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment." Gray, supra, 54 Cal.Rptr. at 114, 419 P.2d at 178.
We noted in our recent decision of Ladner and Company v.Southern Guaranty Ins. Co., 347 So.2d 100 (Ala., 1977), insurer's duty to defend is more extensive than its duty to pay. However, we reject the proposition that an insurer's liability to pay for damages may stem from a breach of its duty to defend. The two duties are to that extent independent. In other words, an insurance company may be liable for attorney's fees for breaching its duty to defend any groundless, false and fraudulent suits that potentially come within the policy where the suit is won by the insured, but such a breach in a suit lost by the insured does not automatically mean that the insured will be liable for total damages; the latter will turn on whether the insured had coverage.[4] *Page 1117 
We conclude therefore that neither the doctrine of collateral estoppel nor the insurer's contractual duty to defend should prevent a specific determination of whether the bodily injury was expected or intended. Great Am. Ins. Co. v. Ratliff,242 F. Supp. 983 (E.D.Ark., 1965).
The remaining question is whether under the facts of this case Farm Bureau has shown a scintilla of evidence that the bodily injury was either expected or intended. We believe it has.
We see no need to reach the issue of fraud and collusion. The judgment in this cause is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
BLOODWORTH, MADDOX, JONES and EMBRY, JJ., concur.
[1] For a review of the basic issue, see The Effect of Collateral Estoppel on the Assertion of Coverage Defenses, 69 Columbia L.Rev., 1459 (1969).
[2] The trial judge denied a motion to realign the parties.
[3] Appellee submits that the affidavit was inadmissible hearsay and could not have been considered by the trial judge. At the least, we believe this would be an admission against interest.Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788 (1942).
[4] In determining whether an insurance company has breached its duty to defend, a judge or jury may look beyond the complaint.Ladner and Company v. Southern Guaranty Ins. Co., 347 So.2d 100
(Ala., 1977).