ROBERTSON, Presiding Justice,
for the Court.
William V. Hurt sued Ray Mallette in the Circuit Court of Jackson County for damages sustained by him when Mallette came over to his house in the early morning hours of October 18, 1974, and shot him in the abdomen with a shotgun.
Plaintiff charged in his declaration that his injuries, suffering and disability resulted from the following acts of the defendant:
a. Defendant negligently and carelessly allowed a dangerous instrument to be discharged striking the Plaintiff.
b. The Defendant negligently and carelessly failed to take due care to make sure the Plaintiff would not be injured as a result of his discharging said weapon..
After a full trial, the jury returned a verdict in favor of the plaintiff and against the defendant for $20,000 damages.
Mallette assigns as error that the Court erred:
1. In overruling his motion for a directed verdict;
2. In refusing to grant a peremptory instruction for the defendant;
3. In refusing to give defendant’s instructions 4 and 5; and
4. That the verdict of the jury is contrary to the overwhelming weight of the evidence and contrary to law.
Hurt cross-appeals, assigning as error that:
1. The verdict of the jury is so grossly inadequate as to evince bias, passion or prejudice on the part of the jury; and
2. The trial court erred in allowing Defendant to introduce evidence of his previous indictment and conviction for aggravated assault.
Early in the morning of October 18,1974, Mrs. Mallette awakened her husband and they entered into a lengthy conversation. Mrs. Mallette admitted to her husband that she had had an affair with Hurt, who lived nearby. Mallette got his shotgun, loaded it and drove to Hurt’s home. He rang the front doorbell; Hurt came to the front door and stepped outside to talk with Mallette. A heated conversation took place and ended with Mallette shooting Hurt in the stomach.
Hurt filed his tort action against Mallette on February 12, 1975. Mallette in his answer denied the charges of negligence set out in the declaration, and alleged that the entire matter was brought about by the wrongful conduct of Hurt in disturbing the domestic tranquillity of Mallette’s home.
Mallette and Hurt were the only witnesses to the incident. Hurt’s wife came from the house after the shot was fired and found her husband on the ground. She requested assistance from Mallette but her request was refused with rather strong language.
It is undisputed that Mallette shot and injured Hurt and the extent of his injuries and the amount of damages to be awarded were questions for the jury to decide. There is ample evidence in the record supporting the jury’s verdict for $20,000 damages.
The trial court correctly refused to grant defendant’s instructions 4 and 5. Instruction 4 stated in part:
“[I]f you find from the evidence that the shooting was not done negligently and carelessly, but that at the time of the shooting Ray Mallette intended that William V. Hurt be shot, then the shooting *505 would be intentional and the Plaintiff would have failed to prove the allegations of his suit.”
Instruction 5 stated in part:
“If you find from the evidence that RAY MALLETTE did not ‘negligently and carelessly’ shoot WILLIAM V. HURT, and if you find that the shooting was an assault and battery, an intentional act, then the Plaintiff has failed to meet the burden of proof on the allegations of his suit, and you should find for the Defendant, RAY MALLETTE.”
It is hard to understand why Defendant Mallette even requested these instructions and still harder to understand why the refusal to grant these instructions would be assigned as error. If these erroneous instructions had been granted, it would have laid defendant Mallette open for a finding of the jury not only for actual damages but also for punitive damages. Clearly it would have been against Mallette’s best interests to get these two instructions. The trial court was imminently correct in refusing to grant them.
In his reply brief, appellant advances the thought that appellee staked his entire case on “negligence and carelessness”:
“. . . for the obvious reason, we believe, that the Appellee wants to try to collect a judgment from Appellant’s comprehensive dwelling policy, rather than pursue an unlikely collection under the other label. Appellant does not wish for Appellee to collect anything from any source, and it would be wrong for it to occur here under the wrong label."
The complete answer to this question is that Hurt’s was an action in tort against Mallette only. No insurance company was a party to this tort action. Any question of liability under an insurance contract of any kind would necessarily have to be raised and decided in an action in contract brought against the insurance company directly or possibly by way of garnishment. These contract questions cannot be raised and answered in a tort action against the tort-feasor alone.
Kelly v. Cherokee Insurance Co., 574 S.W.2d 735 (Tenn.1978), resembles remarkably the case at bar. William Kelly sued Joe A. Hemphill for damages because of injuries sustained by him when Hemphill shot him with a shotgun. Hemphill was a named insured in a homeowner’s policy issued by Cherokee Insurance Company. Cherokee denied coverage and refused to defend the suit. Hemphill also did not defend, and a default judgment for $25,000 was entered against him. In its opinion, the Supreme Court stated these further facts:
“After a nulla bona return on execution issued to collect the judgment from Hemphill and Cherokee’s denial of liability under the homeowner policy, this suit was brought.” 574 S.W.2d at 736.
In reversing the trial court’s summary judgment against Cherokee Insurance Company and remanding the case for a trial on the merits, the Court said:
“In the present posture of this lawsuit the controlling issue is whether or not Cherokee is estopped, or otherwise precluded from litigating the question of whether Hemphill’s acts that injured Kelly were expected or intended, because of the adjudication in the prior suit that Kelly’s injuries were directly and proximately caused by Hemphill’s negligence.
Plaintiff’s principal argument in support of his insistence that Cherokee is precluded from ‘relitigating’ the issue of whether Kelly’s injuries were negligently pr intentionally inflicted is that Cherokee was obligated to defend Hemphill, and in refusing to do so Cherokee is bound by the prior judgment in the tort action, which was explicitly decreed to be predicated upon negligence. We have no quarrel with the general rule that in the absence of fraud or collusion an insurer, who has the duty to defend, has timely notice and defends or elects not to defend, is bound by the judgment in such a case as to issues which were or might have been litigated therein. See, e. g., Pyle v. Bituminous Cas. Corp., 42 Tenn.App. 145, 299 S.W.2d 665 (1956). But, it is our view that this case does not come *506 within the purview of that general rule. The precise issue upon which coverage depends, to wit, whether the insured Hemphill’s acts that inflicted the injuries were ‘expected or intended’ was not and could not have been litigated in the tort case. Defense of the insured in the tort action would cast the insurer and the insured in the untenable position of attempting to cooperate when their interests are adverse, and in the absence of an identity of interest judgment by estoppel does not apply. If in the tort action the insurer sought to exculpate itself from policy coverage by showing that its insured acted intentionally, that position would breach its duty to contest any liability and could render insured liable for punitive damages. That result would strip insured of coverage for compensatory damages, as well as punitive damages.

‘It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance.
It was not possible for the company in these suits to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints.’” 574 S.W.2d at 737-38. (Emphasis added). See also, Alabama Farm Bureau Mutual Casualty Insurance Co., Inc., v. Moore, 349 So.2d 1113 (Ala.1977); McCarty v. Parks, Defendant, Royal Globe Insurance Co., garnishee defendant, 564 P.2d 1122 (Utah 1977); and Jackson v. Maryland Casualty Co, 212 N.C. 546, 193 S.E. 703 (1937).
After carefully examining the evidence adduced, we cannot say that the verdict of the jury was so grossly inadequate as to evidence bias or prejudice on the part of the jury nor can we say that the verdict for $20,000 was so small as to shock the conscience of this Court.
For these reasons, the judgment of the trial court is affirmed on both direct and cross-appeals.
This case was considered by a conference of the judges en banc.
AFFIRMED ON DIRECT AND CROSS-APPEALS.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.