This is an appeal from a judgment rendered on a jury verdict in favor of Leroy Jackson and against Dairyland Insurance Company ("Dairyland") for $20,000. The dispute between these parties arose from a motor vehicle accident in which Jackson was injured.
Jackson was driving his brother's 1985 beige Isuzu pickup truck in the westbound lane of U.S. Highway 80 in Macon County immediately before the accident occurred. According to his testimony, two automobiles passed him traveling at a high rate of speed. Jackson testified that after the second of those two automobiles pulled in front of him its engine "blew up." The resulting cloud of smoke obscured his vision, he said, and he swerved into the eastbound lane of the highway. Upon crossing the lines dividing the two lanes of the highway, Jackson had a head-on collision with a 1980 red Toyota pickup truck. Both Jackson and Michael Reaves, a passenger in the Toyota pickup truck, were severely injured.
After that accident, Reaves filed an action against Jackson in Tallapoosa County, alleging negligence.[1] A judgment on a verdict of $50,000 was entered against Jackson in that action. Following that trial, Jackson filed the instant action in Macon County against Dairyland, pursuant to the uninsured motorist provision in his brother's insurance policy. Jackson alleged that the two drivers of the speeding automobiles *Page 725 
caused his injuries and that those drivers were uninsured.
The Dairyland policy insuring Jackson's brother (and permissive users of the brother's automobile, such as Jackson) is not in the record. Presumably, that policy provided liability coverage that would have been available to indemnify Jackson for the judgment against him in Reaves's action, because Dairyland concedes that the policy provided Jackson with coverage against injuries caused by uninsured motorists. However, Dairyland did not assert at trial, and does not now assert, that its policy provided any such liability coverage for Jackson. It appears that Dairyland did not defend Jackson against Reaves's claim, and there is no indication in the record that Dairyland has paid that judgment.
Jackson testified that the cloud of smoke from the car in front of him totally obscured his vision, and that he turned into the oncoming lane of traffic to avoid striking that car. Jackson's testimony was substantially corroborated by Melvin Sullen. Sullen testified that he was in the first of the two vehicles that passed Jackson and that Lawrence Singleton was driving the second vehicle. Sullen stated that Singleton's vehicle "threw a rod," causing the engine to "blow up," after he had passed Jackson. Sullen also testified that when he returned to the scene of Jackson's accident, there was still smoke present from Singleton's vehicle. Neither the driver of the automobile in which Sullen was a passenger nor Singleton was covered by liability insurance.
Additional evidence indicated that Jackson had consumed five or six beers during the 18-hour period before the accident. There was also evidence that his blood alcohol level exceeded .10% of his total blood volume after his admission to the hospital. However, Jackson's treating physician testified that that blood alcohol level was not accurate, due to treatment measures taken before the blood was drawn and because Jackson had lost a great deal of blood.
At trial, Dairyland stipulated that Jackson was using his brother's pickup truck with permission and was therefore covered under his brother's uninsured motorist policy with Dairyland, but maintained that Jackson was barred from recovering under the policy because his drinking constituted contributory negligence. Jackson denied being intoxicated and argued that he was faced with a sudden emergency that left him with no time to think before he turned into the oncoming lane of traffic.
After considering the evidence, the jury returned a verdict in Jackson's favor, implicitly rejecting Dairyland's contributory negligence defense, and assessing damages of $20,000. The trial judge denied Dairyland's motion for a new trial and entered a judgment consistent with the jury's verdict.
Dairyland appeals, arguing as it did at trial, that Jackson was barred from bringing this action against it by either the doctrine of res judicata or the doctrine of collateral estoppel. Dairyland also reasserts its argument that Jackson was precluded from recovering because he was contributorily negligent. Finally, Dairyland argues that the trial court erred by prohibiting Dairyland from presenting any evidence of Reaves's action against Jackson in Tallapoosa County, and by allowing Jackson's physician to testify regarding the reasonableness and necessity of his medical expenses.
The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. Hughes v. Allenstein, 514 So.2d 858, 860 (Ala. 1987). If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation. Dairyland was not a party to the prior action, and Reaves was not a party to the instant action. However, the "party identity criterion of res judicata does not require complete identity, but only that the party against whomres judicata is asserted was either a party or in privity with a party to the prior action or that the non-party's interests were adequately represented by a party in the prior suit, and the relationship *Page 726 
between the party and non-party is not so attenuated as to violate due process." Whisman v. Alabama Power Co.,512 So.2d 78, 82 (Ala. 1987) (citations omitted). Because Jackson was a party to both actions, and is the party against whom resjudicata was asserted, the party identity criterion was met.
However, the fourth element of res judicata, that each suit was based on the same cause of action, was not met. The determination of whether the cause of action is the same in two separate suits depends on whether the issues in the two actions are the same and whether the same evidence would support a recovery for the plaintiff in both suits. Dominex, Inc. v. Key,456 So.2d 1047, 1054 (Ala. 1984). Stated differently, the fourth element is met when the issues involved in the earlier suit comprehended all that is involved in the issues of the later suit. Adams v. Powell, 225 Ala. 300, 142 So. 537 (1932). Reaves's action against Jackson, which sounded in tort, involved only questions of negligence, and Jackson's claim for damages was not at issue. In contrast, Jackson's suit against Dairyland was a contract action on an insurance policy. To recover, Jackson had to produce evidence that he was covered under his brother's policy, that the accident was caused by an uninsured motorist, and that he was not contributorily negligent. Because the two actions were based on different theories, involved different plaintiffs, and required different evidence to entitle those plaintiffs to recover, they were not the same cause of action. Therefore, the doctrine of resjudicata was not a bar to Jackson's action against Dairyland.
The doctrine of collateral estoppel, or issue preclusion, does not require identity of the causes of action involved. The elements of collateral estoppel are: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties. Pierce v. Rummell, 535 So.2d 594, 596-97 (Ala. 1988);Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985); Wheeler v.First Ala. Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978). Dairyland was not a party to the Tallapoosa County action, and Reaves was not a party to Jackson's action against Dairyland. Therefore, the "same parties" requirement is not met.
A number of decisions by this Court have indicated that the "same parties" requirement is not strictly enforced if the party raising the defense of collateral estoppel, or the party against whom it is asserted, is in privity with a party to the prior action. Constantine v. United States Fidelity GuarantyCo., 545 So.2d 750, 756 (Ala. 1989); Alabama Farm Bureau Mut.Cas. Ins. Co. v. Moore, 349 So.2d 1113, 1116 (Ala. 1977);Mitchell v. Austin, 266 Ala. 128, 130, 94 So.2d 391, 393
(1957). The test for determining if two parties are in privity focuses on identity of interest. Moore, supra; Suggs v. AlabamaPower Co., 271 Ala. 168, 123 So.2d 4 (1960); Rowe v. Johnson,214 Ala. 510, 108 So. 604 (1926); Sosebee v. Alabama FarmBureau Mut. Cas. Ins. Co., 56 Ala. App. 334, 321 So.2d 676
(1975). This Court's reliance on the identity-of-interest test for determining the existence of privity extends at least as far back as 1853. In Winston v. Westfeldt, 22 Ala. 760, 771
(1853), this Court held:
 "[A]s a general rule . . . a judgment or decree is binding on parties and privies; but, technically speaking, there can be no privity where there is not an identity of interest."
The only party to the Tallapoosa County action that Dairyland could be in privity with is Jackson. Although there is no evidence in the record that Dairyland and Jackson shared a common interest in the Tallapoosa County action, even if this Court assumes that they did, they no longer have an identity of interest, due to their roles as adversaries in the Macon County action. Therefore, they are not in privity. Moore, supra;Suggs, supra; Rowe, supra; Winston, supra. In addition, Dairyland cannot take advantage of the prior judgment against Jackson in Tallapoosa County, because that judgment was against any interest it may have had in that action as a possible insurer of Jackson. *Page 727 
It is settled that the party claiming the benefit of the prior judgment as an estoppel against the opposing party must be one who would have been prejudiced by a contrary decision in the prior case. Constantine, supra; Interstate Electric Co. v.Fidelity Deposit Co. of Maryland, 228 Ala. 210, 153 So. 427
(1934). Dairyland, as a possible insurer of Jackson, would have benefitted from a contrary decision in the Tallapoosa County action.
Under the facts of this case, neither the "same parties" requirement nor the privity exception to that requirement has been met. Therefore, the doctrine of collateral estoppel is not a bar to Jackson's action.
Dairyland also contends that the evidence that Jackson's blood alcohol level exceeded .10% after the accident established that he was contributorily negligent and was thus barred from recovering from Dairyland. That defense was implicitly rejected by the jury. Alabama has long recognized the existence of the "sudden emergency" doctrine. Under that doctrine, a person faced with a sudden emergency calling for quick action is not held to the same correctness of judgment and action that would apply if he had had the time and opportunity to consider fully and choose the best means of escaping peril or preventing injury. Jefferson County v.Sulzby, 468 So.2d 112 (Ala. 1985); Gleichert v. Stephens,291 Ala. 347, 280 So.2d 776 (1973); Clark v. Farmer, 229 Ala. 596,159 So. 47 (1935).
The jury was presented with sufficient evidence to allow it to conclude that Jackson was faced with just such an emergency. That conclusion could vitiate Dairyland's contributory negligence defense, because it could remove the factor of Jackson's alleged intoxication as the proximate cause of the accident. This Court will not disturb a jury's determination of a factual issue unless it appears plainly and palpably wrong.City of Mobile v. Jackson, 474 So.2d 644 (Ala. 1985). Absent a showing that Jackson's alleged negligence proximately contributed to the accident, the defense of contributory negligence would not preclude his recovery. Cooper v. BishopFreeman Co., 495 So.2d 559, 563 (Ala. 1986).
In addition, this Court finds no error on the part of the trial court in its decision to grant Jackson's motion in limine to prohibit any reference to the Tallapoosa County action in which Jackson was a defendant. As we stated earlier, the doctrines of res judicata and collateral estoppel were properly found to present no bar to Jackson's action. Therefore, the prejudicial effect of any evidence of the Tallapoosa County action would outweigh its probative value. Questions regarding the admissibility of evidence on grounds of relevancy rest largely with the trial court, and its rulings will not be disturbed unless there has been an abuse of discretion. AmSouthBank, N.A. v. Spigener, 505 So.2d 1030 (Ala. 1986). This Court finds no evidence of such an abuse in this case.
Finally, Dairyland contends that the trial court erred by allowing Dr. Jon Widener to give his opinion as to the reasonableness of the hospital bills incurred by Jackson as a result of the accident. However, as one of the first physicians to examine Jackson upon his admission to the hospital, and as Jackson's treating physician, Dr. Widener was well qualified to give an opinion as to whether the care given to Jackson was necessary and whether the charges for that care appeared to him to be "fair and reasonable." Opinion testimony by expert witnesses, such as Dr. Widener, on questions within their area of expertise, has been expressly authorized by our legislature. Ala. Code 1975, § 12-21-160; R.L. Reid, Inc. v. Plant,350 So.2d 1022 (Ala. 1977).
Because this Court finds no error on the part of the trial court, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Reaves included claims in that action against his insurer and against the insurer of the driver of the Toyota pickup truck for uninsured/underinsured motorist coverage. *Page 728