UNITED STATES of America, Plaintiff,

v.

John W. JONES, Jr., et al., Defendants.

No. 93–0745–B–M.

United States District Court,
S.D. Alabama, S.D.

Oct. 25, 1993.

J. Gerald Hebert, Steven H. Rosenbaum, Deanne E.B. Ross, Attys., Voting Section, Civil Rights Div., Dept. of Justice, Washington, DC, Edward J. Vulevich, Jr., Acting U.S. Atty., for plaintiff U.S.

Cartledge Blackwell, Selma, John E. Pilcher, Selma, AL, for defendants John W. Jones and W.D. Nichols.

J.L. Chestnut, Selma, AL, for defendant Curtis Williams.

John W. Kelly, William T. Faile, Philip Henry Pitts, Selma, AL, for John Lide.

## MEMORANDUM OPINION
## AND ORDER

BUTLER, District Judge.

In but another chapter in the continuing saga of the history of voting rights litigation emanating from Dallas County, a federal court is being asked to resolve a dispute that arose after a black candidate, the Rev. Curtis Williams, defeated the white candidate John Lide by 4 votes out of 4,534 cast in the November 3, 1992 general election for the District 2 seat on the Dallas County Commission. But this is not a typical Section 2 Voting Rights Act case brought by the Justice Department. This story began when Lide filed a state court election contest, and won it by 10 votes; Williams then appealed to the Alabama Supreme Court and stayed in office while the appeal was pending. On August 23, 1993, the Supreme Court upheld the trial judge, and its judgment will take effect October 26, 1993, when Lide is due to take office. On September 10, 1993, the Justice Department filed this action claiming that no matter what the result of the state election contest was, it had discovered evidence of an additional 72 whites who illegally voted in District 2, as they lived just over the boundaries of the district, and thus violated Section 2 of the Voting Rights Act. This matter came before the court for argument to determine whether the court should conduct an expedited hearing today on the motion of the plaintiff, the United States, and the intervenor-plaintiff Rev. Curtis Williams for a preliminary injunction under Rule 65(a), Federal Rules of Civil Procedure, to order the "status quo" and to enjoin the defendants

"from taking any action that would change the current membership on the Dallas County Commission." Motion for Preliminary Injunction, p. 6. (When this action was instituted, only the persons who were responsible for the conduct of the election were named as defendants, i.e. Jones, Nichols, Kynard and Shaw. The United States did not name Lide as a defendant until October 22, 1993).

### I. Procedural History [1]

After the ballots were counted on November 3, 1992, Williams was declared the winner by a margin of 2,269 to 2,265. Lide filed an election contest two weeks later, "alleging '(1) that illegal votes were given to and counted for Williams; (2) that legal votes for Lide were unlawfully rejected; (3) that there was malconduct, fraud, or corruption involved in the election; and (4) that there was miscalculation, mistake, or misconduct in counting and tallying of votes by election officials.'" *Williams*, 628 So.2d at 533.

In the words of the Alabama Supreme Court, "(t)he grounds for contesting the votes were generally two: (1) the voter did not reside in district 2; or (2) the voter's oath was deficient because it was not signed by an election inspector or did not adequately identify the voter's place of residence." *Id.* at 534.

This contest was heard before the Circuit Court of Dallas County, which entered a judgment for Lide on April 9, 1993, "based on its finding that Lide had received the highest number of legal votes cast." *Id.* Seventy-one (71) ballots were challenged by both parties, and both parties put on other evidence in support of their respective cases. Once the presentation of evidence was complete, the trial court considered the proof, and named Lide the winner on April 9, 1993 (some 5 months after the challenge was initially filed) by a margin of 2,272 votes for Lide and 2,262 for Williams. *Id.* at 534. Williams appealed that decision to the Supreme Court of Alabama,[2] arguing that the circuit court had erred in its findings on the

---

1. This summary is based on the account given in *Williams v. Lide,* 628 So.2d 531 (Ala.1993).

2. A stay of the circuit court's judgment was entered, so that Williams continues to occupy the seat through today.

voting rights of convicted felons, the legality of certain challenged votes and absentee votes, and the exclusion of the testimony of a witness for Williams. *Id.* at 533–34. After thorough consideration of these issues, the state Supreme Court entered a judgment upholding the decision of the circuit court;[3] this judgment is due to take effect on October 26, 1993, with the assumption by John Lide of the position of commissioner for District 2.

## II. Analysis of Law

To prevail on a motion for a preliminary injunction, a plaintiff must show:

> (1) a substantial likelihood that the movant will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (4) that the injunction would not be adverse to the public interest.

*Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984).

While the court accepts the plaintiffs' argument that they meet the second and third factors for the purposes of this order, the plaintiffs do not meet their burden with regard to the first and fourth requirements.

■ To begin with, even assuming the plaintiffs' proof to be undisputed and properly before the court, they face a stringent burden in succeeding now that the state courts have spoken. "(O)ur federal system contemplates that states will be primarily responsible for regulating their own elections." *Curry v. Baker,* 802 F.2d 1302, 1315 (11th Cir.1986). Even when obvious racial discrimination is at work, voiding the result of a state election is a "drastic, if not staggering (practice) ... and therefore a form of relief to be guardedly exercised." *Bell v. Southwell,* 376 F.2d 659, 662 (5th Cir.1967).

■ Moreover, even accepting for the sake of argument that this case merits the extraordinary relief sought, the plaintiffs have failed to adequately address the problem presented to their proposed body of evidence[4] by the doctrine of collateral estoppel (also referred to as issue preclusion). Federal courts apply the law of collateral estoppel used in the state in which the particular courts sits. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158 (5th Cir.1981). Under Alabama law, the elements of collateral estoppel are: "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Dairyland Ins. Co. v. Jackson,* 566 So.2d 723, 726 (Ala. 1990).

■ The plaintiffs' first argument is that collateral estoppel does not foreclose their proof on the issue of voter qualifications because the 72 voters this case is focused on are totally distinct from the 71 voters the state case considered. The plaintiffs' may be correct in that the particular voters at issue differ; however, by this logic, no election dispute could ever be settled until every single ballot had been verified. The issue is not whether John Doe, Dallas County resident, was qualified to vote in District 2, but whether the citizens who cast ballots in District 2 were qualified to do so. Since this is one of the issues that was addressed by the Alabama Supreme Court, the plaintiffs' first objection to the doctrine of collateral estoppel is meritless.

■ The plaintiffs' next argument against the application of collateral estoppel notes that Alabama law requires mutuality between the contending parties for the doctrine to apply, and since the government was not a party to the first case, or in privity with Williams, they contend that they cannot be bound by the determination in that case. Alabama law does not insist that the parties be exactly the same; "(t)he test for determining if two parties are in privity focuses on identity of interest." *Dairyland Ins. Co.,* 566 So.2d at 726. Although the govern-

---

**3.** *Williams v. Lide,* 1993 WL 316460, 1993 Ala. LEXIS 829 (8/23/93), withdrawn and reissued at 628 So.2d 531.

**4.** In denying the hearing on the motion for preliminary injunction, the court allowed the plaintiffs to make a proffer of their evidence.

ment's primary cause in this case may be said in theory to be the vindication of the right to vote guaranteed all black citizens in District 2, in fact they are attempting to place the Rev. Williams in the seat for District 2—the same cause that motivated Williams' own litigation in state court.[5]

Finally, the court notes that the plaintiffs must show a *substantial* likelihood of success on the merits. While some of the grounds listed above could arguably be viewed in the government's favor, taken together they suggest that the plaintiff is not assured of success on the merits, and that the plaintiff therefore does not satisfy the first prong of the *Gresham* preliminary injunction test.

The court also bases its denial of the plaintiffs' request for a hearing on their motion for preliminary injunction on the fourth factor requisite to the granting of a motion for preliminary injunction, the public interest. The plaintiffs, in essence, are asking this court to block the effectuation of a decree of the Alabama Supreme Court, reached by that court after a far more detailed consideration of the matter of voter residency than this court has yet had time to consider. Moreover, the plaintiffs admit that such an action—enjoining the enforcement of a state supreme court judgment on an issue of state law—is without precedent, a fact which, given the extensive history of federal judicial overview of civil rights matters in the South since the passage of the Voting Rights Act in 1965, amply demonstrates just how extraordinary a step the plaintiffs are proposing. Granting this injunction would surely raise doubts as to the seriousness with which this court regards the principle of comity between the courts, with a commensurate effect on the relationship between the two systems. In addition, preliminarily enjoining the decision of the Supreme Court of Alabama without an adequate opportunity for full discovery and trial on the merits would be adverse to the public perception of that court's authority, and of the finality of judicial action in general.

The plaintiffs acknowledge these problems, but argue that the injury threatened to the class of black voters represented by the United States, denial of their fundamental right to vote by dilution of those votes, outweighs the potential damage posed by this injunction. This alleged injury may be effectively remedied by this court upon consideration of the merits at trial, and that beyond the injury presumed at law, the plaintiffs do not allege nor have they proffered any planned action by Lide in his capacity as commissioner which will irreparably harm the plaintiffs between October 26 and some future date when the proposed trial before this court would be complete.

Because this motion seeks such extraordinary action in requesting a preliminary injunction against a fully considered and adjudicated decision of the Supreme Court of Alabama, the plaintiffs' motion for a preliminary injunction is **DENIED**. This matter is set for a hearing on the merits on January 24, 1994.

It is so **ORDERED**.

5. The court also points out that, with the naming of Lide in the government's amended complaint and the intervention of Williams as a plaintiff, both state court litigants are now parties in this case.