THOMAS, Judge.
 

 This appeal arises from an action in which Chester E. Williams and Rita K. Williams sued Katherine G. Moore to quiet title to a tract of property (“the disputed property”). Moore counterclaimed against the Williamses, seeking to quiet title to the disputed property and alleging trespass to that property. Moore claims to own the property by descent from her father, Alvin Garrick, and through a separate chain of title to that claimed by the Williamses. The Williamses claim to own the disputed property from a chain of title beginning with W.C. Garrick, Sr., and Mary B. Garrick, and through various conveyances, passing through W.C. Garrick, Jr., and his wife, and, ultimately, being conveyed to the Williamses by Lamar Hicks through a mortgage-foreclosure deed, foreclosing on a mortgage executed by Sharon Roberts. During the pendency of the action, the Williamses purported to convey the disputed property to Keith J. Savoie, whom Moore ultimately added as a third-party defendant. The case was tried before a jury, and the jury found in favor of Moore and against the Williamses and Savoie. The trial court entered a judgment on that jury verdict, from which the Williamses appeal.
 
 [1]
 

 Procedural History
 

 On April 5, 2002, the Williamses filed a complaint against Moore seeking to quiet
 
 *535
 
 title to certain real property in Clarke County. The complaint alleged that Moore was claiming ownership of a 14-aere tract, more or less, of property that the Williamses purported to own. Attached to the complaint was the legal description of the Williamses’ real property contained in the mortgage-foreclosure deed from Hicks. The property described in the deed includes a tract
 

 “in the SE 1/k of the
 
 <SW
 
 Hk and in the S 1/2 of the SE l/k all in Section lk, all in [Toumship]-9-[North], [Range]-k-[East], Clarke County, Alabama, containing 85.8 acres more or less.”
 

 On May 15, 2002, Moore filed her answer, admitting that she
 

 “claim[ed] to own and does own a 15 acre tract of land in Subdivision D and being part of the West part of the Southwest Quarter of the Southeast Quarter Section 14, Township 9 North, Range 4 East.”
 

 Moore claimed to possess legal title to the disputed property, and, in the alternative, she claimed ownership of the property by adverse possession. In her counterclaim, Moore alleged that she was the owner of a tract of land
 

 “in the Southwest Quarter of the Southeast Quarter of Section lk, Township 9 North, Range k East; Clarke County, Alabama; Containing 15 acres more or less.”
 

 She also asserted a trespass claim against the Williamses, alleging that they had cut and removed timber from, and had otherwise damaged, the disputed property.
 

 On June 4, 2002, the Williamses filed an answer to the counterclaim asserting, among other things, the affirmative defense that Moore was estopped from asserting her counterclaim. On October 23, 2003, before the case had been set for trial, the Williamses amended their answer to Moore’s counterclaim, specifically asserting the affirmative defenses of res judica-ta, collateral estoppel, and waiver.
 
 See
 
 Rule 15, Ala. R. Civ. P. On October 28, 2003, the Williamses filed a motion for a summary judgment. In their motion, the Williamses argued that Moore was barred from asserting her claims by the doctrines of res judicata and collateral estoppel because, they asserted, the various ownership interests in, among other things, the disputed property had been determined in a previous lawsuit. The Williamses argued that Moore had been served in the previous lawsuit and that, although she had apparently not participated in the previous lawsuit, she was precluded from now asserting an ownership interest in the disputed property. On February 24, 2004, the trial court entered an order denying the Williamses’ motion for a summary judgment.
 

 On March 10, 2004, the Williamses moved the trial court to allow them to amend their answer to Moore’s counterclaim to include the affirmative defense that Moore had failed to join indispensable parties pursuant to Rule 19, Ala. R. Civ. P. On March 18, 2004, the trial court entered an order granting the Williamses’ motion to amend their answer to Moore’s counterclaim.
 

 On April 18, 2005, Moore amended her counterclaim to include Savoie as a party. During the pendency of the action, the Williamses had purported to convey the disputed property to Savoie.
 

 On July 18, 2005, Savoie filed an answer by and through the same counsel as the Williamses. Savoie’s answer claimed
 

 “ownership of the disputed property in connection with a Warranty Deed recorded at Deed Book 1197, page 746, dated May 7, 2002, and recorded in the Probate Judges’ Office in Clarke County, Alabama.”
 

 
 *536
 
 On December 26, 2005, counsel for the Williamses and Savoie moved for leave to withdraw as counsel for Savoie due to a potential conflict of interest. That motion was granted on January 4, 2006. On February 13, 2006, new counsel appeared on behalf of Savoie, filing a notice of appearance along with a motion to join an indispensable party, the Federal Land Bank of South Alabama (“FLB”), the bank holding the mortgage executed by Savoie on the disputed property that Savoie had purportedly purchased from the Williamses.
 

 On February 17, 2006, Moore moved the trial court to allow her to add FLB as a third-party defendant. That same day the trial court granted that motion.
 

 On March 24, 2006, FLB answered, alleging that it owned a mortgage on the disputed property. On June 1, 2006, FLB moved the trial court to allow it to amend its answer, seeking to avail itself of the affirmative defenses of res judicata and collateral estoppel. At the same time, FLB also filed a motion for a summary judgment, arguing that, because she had failed to file a compulsory counterclaim in the previous lawsuit involving the disputed property, Moore’s claims against it were barred by the doctrines of res judicata and collateral estoppel.
 

 On July 24, 2005, the Williamses filed a second motion for a summary judgment, restating their original motion and adding the argument that Moore’s counterclaim was barred because she had failed to file a compulsory counterclaim in the previous lawsuit. On September 22, 2006, the Williamses filed a motion to dismiss Moore’s counterclaim for failure to join indispensable parties.
 

 On October 19, 2006, the trial court set for hearing on January 9, 2007, all the pending motions to dismiss for failure to join indispensable parties and the pending motions for a summary judgment. On February 22, 2007, the trial court entered an order denying the motions to dismiss for failure to join indispensable parties, as well as FLB’s and the Williamses’ motions for a summary judgment.
 

 On August 3, 2007, Moore filed a motion to strike the affirmative defenses raised by the Williamses and FLB, specifically the affirmative defenses of res judicata, collateral estoppel, and waiver. Contemporaneously, Moore also filed a motion in limine seeking to preclude those defenses from being raised at trial. The trial court granted both of Moore’s motions. However, at all stages of the proceedings, the Williamses strenuously objected to the trial court’s having struck their affirmative defenses. The Williamses were allowed to proffer evidence relating to their affirmative defenses, outside the presence of the jury, through testimony and several exhibits.
 

 The trial court tried the matter from August 6 through August 9, 2007. On August 8, 2007, the Williamses moved for a judgment as a matter of law (“JML”) pursuant to Rule 50, Ala. R. Civ. P., at the close of evidence. The trial court denied the motion the same day. On August 9, 2007, the jury returned a verdict in favor of Moore on the Williamses’ claim and on her counterclaim. The jury awarded Moore $10,000 as damages for trespass. The trial court entered a judgment on that verdict on August 15, 2007, stating, in pertinent part:
 

 “It is therefore, ORDERED, ADJUDGED and DECREED that the defendant, Katherine G. Moore is the owner of the following described property below and that the plaintiffs, Chester E. Williams and Wife, Rita K. Williams and counter-defendant, Keith J. Savoie have no title, claim or interest in said property. Said property being described as follows: ‘A 15 acre tract in Subdivision
 
 *537
 
 D and being out of the West part of the Southwest Quarter of the Southeast Quarter of Section 14, Township 9 North, Range 4 East.’ ...
 

 “It is further, ORDERED, ADJUDGED and DECREED, that the defendant, Katherine G. Moore, have and recover a judgment against the plaintiffs, Chester E. Williams and wife, Rita K. Williams, in the amount of Ten Thousand ($10,000.00) and no/100 Dollars, for which let execution issue.”
 

 The Williamses failed to file a renewed motion for a JML pursuant to Rule 50, Ala. R. Civ. P. On September 10, 2007, the Williamses filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. On December 6, 2007, the trial court denied the Williamses’ postjudgment motion. On December 17, 2007, the Williamses timely appealed.
 
 [2]
 

 Analysis
 

 I. Appellee’s Brief of Keith J. Savoie
 

 Savoie, a third-party defendant who was subject to an adverse judgment below, has filed an appellee’s brief on appeal. However, he is not a proper appel-lee and should have filed a notice of appeal of the judgment below. The filing of a notice of appeal is a jurisdictional act. Rule 2(a)(1), Ala. R.App. P.;
 
 Miller v. Miller,
 
 10 So.3d 570, 572 (Ala.Civ.App.2008). Therefore, we do not consider the arguments in the brief filed by Savoie in this case.
 

 II. Res Judicata
 

 On appeal, the Williamses argue that the trial court erred because, they assert, Moore was precluded by the doctrine of res judicata from asserting her counterclaim against them. The Williamses argue that the issue of the ownership of the disputed property had already been adjudicated in the previous lawsuit in Clarke County. We agree.
 

 In 1999, a timber company, MacMillan Bloedel Timberlands, Inc. (“MacMillan Bloedel”), in case no. CV-98-140M in the Clarke Circuit Court (“the MacMillan Bloedel lawsuit”), filed a complaint in in-terpleader seeking to determine the payees under a “Timber Sale and Purchase Contract” (“the timber contract”). The timber contract was for a term commencing January 1, 1968, and ending December 31, 2028. MacMillan Bloedel’s predecessor in interest had entered into the timber contract with W.C. Garrick, Sr., and Mary B. Garrick. Attached to the timber contract is a document entitled “Exhibit A,” which describes Tract # 2 under that contract to encompass
 

 “in all 460 acres, more or less, being in Section[s] 22-23 and 14, Township 9, Range 4 East situated, lying and being in Clarke County, Alabama.”
 

 An attachment to the complaint in the MacMillan Bloedel lawsuit indicates that some of the land in Section 14 is reserved for the use of the owners, pursuant to the timber contract. The timber contract itself names W.C. Garrick, Sr., and Mary B. Garrick as “the Owner[s]” of the property subject to the timber contract.
 

 The complaint in the MacMillan Bloedel lawsuit alleges that “Defendant Katherine G. Moore is an individual resident of Clarke County, Alabama.” That complaint further alleges:
 

 “On April 27, 1998, a tax sale of certain lands owned by Sharon Roberts and located in Tract # 2 was held. These
 
 *538
 
 lands were purchased by James Prescott, Jr. As reflected in Certificate of Land Sold for Taxes and Purchased by an Individual. A true and correct copy of said instrument is attached hereto as Exhibit 50.”
 

 Further, the complaint alleges:
 

 “[MacMillan Bloedel] is also aware that another parcel of land located in Tract #2 and previously conveyed to Sharon Roberts has been assessed for taxes to one Katherine G. Moore.”
 

 The case-action summary for the MacMil-lan Bloedel lawsuit shows that Moore was served in that action on September 1,1998.
 

 The trial court’s July 9, 1999, judgment in the MacMillan Bloedel lawsuit states:
 

 “This is a case in interpleader filed by Plaintiff, MacMillan Bloedel Timber-lands, Inc., to ascertain the proper recipients of the purchase price payments made, or to be made, by [MacMillan Bloedel] after January 1, 1998, under that certain Timber Sale and Purchase Contract dated August 31, 1966, by and among Harmac Alabama, Inc., an Alabama corporation and [MacMillan Bloe-del’s] predecessor in interest, and W.C. Garrick, Sr. and Mary B. Garrick (the ‘Owners’), pursuant to which the Owners agreed to sell exclusively to [MacMillan Bloedel], and [MacMillan Bloedel] agreed to purchase from the Owners, all timber standing and growing on certain of Owner’s land located in Clarke County, Alabama during the term commencing January 1, 1968 and ending December 31, 2028 (the
 
 ‘Timber Contract’).
 
 The purchase price for timber purchased under the Timber Contract currently is paid by [MacMillan Bloedel] through advances of equal quarterly payments in the amount of $3,557.08, with any remaining purchase price being paid at the time the timber is harvested (collectively, the
 
 ‘Timber Contract Payments
 
 ’).
 

 The Timber Contract defines the ‘land’ that is subject thereto as all land owned by the Owners located in Clarke County, Alabama, being 927 acres, more or less, and being more particularly described in Exhibit A to the Timber Contract (the ‘Timber Contract Land’). Exhibit A to the Timber Contract separates the land into Tract # 1 and Tract # 2.
 

 “This case is before the Court on [MacMillan Bloedel’s] Motion for Summary Judgment filed March 25, 1999, pursuant to Rule 56 of the Alabama Rules of Civil Procedure. [MacMillan Bloedel’s] Motion was set for hearing before the Court on May 25, 1999. Based on the uncontroverted facts set forth in the pleadings filed in this case and upon the affidavit of Otto (Bo) Ha-slbauer, Jr., R.F., Manager, Controlled Lands Administration of [MacMillan Bloedel], filed as Exhibit A to [MacMil-lan Bloedel’s] Motion for Summary Judgment, together with the maps and calculations attached to and made a part of said affidavit, the Court has determined that there is no genuine issue of material fact and that [MacMillan Bloe-del] is entitled to a judgment as a matter of law.
 

 “Accordingly, it is ORDERED, ADJUDGED and DECREED as follows:
 

 “(1) [MacMillan Bloedel] is discharged from all liability to Defendants [ (including Moore) ] or to any other claimants other than the obligation to pay the Timber Contract Payments to the Particular Defendant [ (excluding Moore) ] entitled to a portion of the Timber Contract Payments (the
 
 ‘Payment Recipients
 
 ’) in the proportions set forth below:
 

 [[Image here]]
 

 “TRACT 2
 

 “John C. Milstead:
 

 1.68 Contract Cords
 

 
 *539
 
 “Reginald and Linda Barnes
 

 9.58 Contract Cords
 

 ’’James Prescott, Jr. (after April 27,1998)
 

 253.64 Contract Cords
 

 ’’Sharon M. Roberts (through April 27,1998) 258.34 Contract Cords
 

 ’’Sharon M. Roberts (after April 27,1998)
 

 4.7 Contract Cords
 

 “Darren and Paula Powell:
 

 1.86 Contract Cords
 

 [[Image here]]
 

 “(4) The West boundary of Tract # 2 is located as shown on Exhibit A-2 to the Haslbauer Affidavit, a copy of which is attached to and incorporated herein by this reference.
 

 [[Image here]]
 

 “(10) No finding is made with respect to whether any of the Timber Contract Land, or those
 
 aiming
 
 same, are in compliance, or not in compliance, with the provisions of the Timber Contract
 

 [[Image here]]
 

 (Emphasis added.)
 

 The Supreme Court of Alabama has stated:
 

 “The elements of both res judicata and collateral estoppel were set out by this Court in
 
 Wheeler v. First Ala. Bank of Birmingham,
 
 364 So.2d 1190, 1199 (Ala.1978). Res judicata requires (1) a prior judgment rendered by a court of competent jurisdiction; (2) a prior judgment rendered on the merits; (3) substantially the same parties in both suits; and (4) the same cause of action in both suits. Where these elements are present, the former suit bars any later suit on the same cause of action, including issues that were or could have been litigated in the prior case.”
 

 Lott v. Toomey,
 
 477 So.2d 316, 318-19 (Ala.1985).
 

 By proffer, the Williamses introduced a certified copy of the complaint, a certified copy of the final judgment, a certified copy of the case-action summary, and a certified copy of a letter from MacMillan Bloedel to the trial court outlining its distribution of proceeds to the various “[l]andowner[s]” in the MacMillan Bloedel lawsuit.
 

 There is no doubt that the Williamses showed that there had been a prior judgment rendered by a court of competent jurisdiction, the Clarke Circuit Court, the same court in which the instant action was tried.
 
 See Webb v. City of Demopolis,
 
 14 So.3d 887 (Ala.Civ.App.2008).
 

 That prior judgment was rendered and entered on the merits; the final judgment granted MacMillan Bloedel’s motion for a summary judgment. “A summary judgment operates as an adjudication on the merits of a claim.”
 
 Bean v. Craig,
 
 557 So.2d 1249, 1253 (Ala.1990);
 
 see also Farley v. Genuine Parts Co.,
 
 701 So.2d 43 (Ala.Civ.App.1997).
 

 Substantially the same parties were involved in both the instant action and the MacMillan Bloedel lawsuit. Moore was named as a defendant in the MacMillan Bloedel lawsuit. The certified case-action summary for the MacMillan Bloedel lawsuit shows that Moore was served in that action on September 1,1998. The Williamses were not parties in the MacMillan Bloedel lawsuit. However,
 

 “the ‘party identity criterion of
 
 res judi-cata
 
 does not require complete identity, but only that the party against whom
 
 res judicata
 
 is asserted was either a party or in privity with a party to the prior action or that the non-party’s interests were adequately represented by a party in the prior suit, and the relationship between the party and non-party is not so attenuated as to violate due process.’
 
 Whisman v. Alabama Power Co.,
 
 512
 
 *540
 
 So.2d 78, 82 (Ala.1987) (citations omitted).”
 

 Dairyland Ins. Co. v. Jackson,
 
 566 So.2d 723, 725-26 (Ala.1990). In
 
 Dairyland,
 
 the supreme court concluded that, “[bjecause Jackson was a party to both actions, and is the party against whom
 
 res judicata
 
 was asserted, the party identity criterion was met.”
 
 Id.
 
 at 726. Moreover, successors in title are in privity with their predecessors in title.
 
 Henderson v. Scott,
 
 418 So.2d 840, 842 (Ala.1982). The Williamses’ predecessors in title to the land, Sharon Roberts and Lamar Hicks, were defendants in the MacMillan Bloedel lawsuit.
 

 The same cause of action was presented in both lawsuits. Moore argues in her brief to this court that the claims asserted in the MacMillan Bloedel lawsuit sounded in contract and that that action did not involve any quiet-title or trespass claims and that, therefore, the causes of action are not the same for the purposes of res judicata. Moore further argues that, because she does not claim ownership under the same chain of title as W.C. Garrick, Sr., and Mary B. Garrick, neither Moore nor her predecessors in interest were entitled to payments under the timber contract. However,
 

 “[ejven though some of our cases have recognized that the plaintiffs presentation of alternative legal theories in a second action can be a factor to be considered in determining whether the two causes of action are the same, see, e.g.,
 
 Benetton S.p.A. v. Benedot, Inc.,
 
 [642 So.2d 394 (Ala.1994) ];
 
 Vaughan v. Barr,
 
 [600 So.2d 994 (Ala.1992) ]; and
 
 Dairyland Ins. Co. v. Jackson,
 
 [566 So.2d 723 (Ala.1990) ], this Court has made it very clear that the determinative inquiry is whether the claims in both actions arise out of, and are subject to proof by, the same evidence.”
 

 Equity Res. Mgmt., Inc. v. Vinson,
 
 723 So.2d 634, 637 (Ala.1998);
 
 see also Thomas v. Lynn,
 
 620 So.2d 615, 616 (Ala.1993) (“Whether the same cause of action is alleged in the original lawsuit and the subsequent lawsuit depends upon whether the issues in the two causes of action are the same and whether the same evidence would support a recovery in both lawsuits.
 
 Dominex, Inc. v. Key,
 
 456 So.2d 1047 (Ala.1984). ‘Regardless of the
 
 form,
 
 of the action, the issue is the same when it is supported in both actions by substantially the same evidence. If it be so supported, a judgment in one action is conclusive upon the same issue in any suit, even if the cause of action is different.’
 
 Garris [v. South Alabama Production Credit Ass’n,
 
 537 So.2d 911,] 914 [ (Ala.1989) ].”).
 

 The MacMillan Bloedel lawsuit determined the ownership of the land subject to the timber contract, including the disputed property, after numerous conveyances by W.C. Garrick, Sr., and Mary B. Garrick, as well as conveyances by others subsequent to the Garricks’ deaths, to determine which parties owned the land and should be paid pursuant to the timber contract. In its final judgment in the MacMillan Bloedel lawsuit, the trial court expressly stated:
 

 “Based upon the uncontroverted facts set forth in the pleadings filed in this case and upon the affidavit of Otto (Bo) Haslbauer, Jr., R.F., Manager, Controlled Lands Administration of [Mac-Millan Bloedel], filed as Exhibit A to [MacMillan Bloedel’s] Motion for Summary Judgment, together with the maps and calculations attached to and made a part of said affidavit, the Court has determined that there is no genuine issue of material fact and that [MacMillan Bloedel] is entitled to a judgment as a matter of law.”
 

 
 *541
 
 Otto Haslbauer was a witness and testified in the instant case. Haslbauer testified, by proffer, and outside the presence of the jury, that the purpose of the MacMillan Bloedel lawsuit was to determine the boundaries and ownership of the land subject to the timber contract, including the disputed property, so that the payments due pursuant to the timber contract would be paid to the proper people, i.e., the property owners. He also testified regarding the disputed property at issue.
 

 Additionally, Exhibit A-2 to Haslbauer’s affidavit, which was attached to, and incorporated by reference in, the final judgment in the MacMillan Bloedel lawsuit, was submitted to the trial court as evidence in the instant case. That exhibit depicts the disputed property and reflects that the property described in the exhibit is clearly the same land shown on the surveys submitted by the parties in the instant action and described by the parties in the instant action.
 

 Further, a number of the deeds attached to the complaint, and referenced by the final judgment, in the MacMillan Bloedel lawsuit contain identical property descriptions of the disputed property to several deeds admitted into evidence in the instant case. Also, Moore introduced evidence indicating that the disputed property had been double-assessed for taxes, an issue raised in the MacMillan Bloedel lawsuit.
 

 In
 
 Equity Resources Management, Inc. v. Vinson,
 
 our supreme court stated:
 

 “ ‘ “In civil cases the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, and as evidence, conclusive, between the same parties upon the same matter directly in question in another court. A verdict for the same cause of action, between the same parties, is absolutely conclusive. And the cause of action is the same when the same evidence will support both actions, although the actions may happen to be founded on different writs. Thus a judgment in trespass will be a bar to an action of trover for the same taking. And a verdict in trover will be a bar to an action for money had and received for the sale of the same goods.” ’ ”
 

 723 So.2d at 637 (quoting
 
 Gulf American Fire & Cas. Co. v. Johnson,
 
 282 Ala. 73, 78, 209 So.2d 212, 216 (1968)(quoting in turn
 
 Cannon v. Brame,
 
 45 Ala. 262, 263 (1871))).
 

 The ownership of the disputed property was litigated in the MacMillan Bloedel lawsuit, and all the elements of res judicata were established by the Williamses. Thus, Moore was barred from bringing her counterclaim asserting her ownership of the disputed property in the instant action.
 
 Whisman v. Alabama Power Co.,
 
 512 So.2d 78, 81 (Ala.1987)(“[U]nder
 
 res judi-cata
 
 we have consistently rejected an attempt by a former defendant to relitigate issues that were, or could have been, raised in prior litigation that ended in a valid adjudication by a court of competent jurisdiction.”). Moreover, “[t]he interest of society demands that there be an end to litigation, that multiple litigation be discouraged, not encouraged, and that the judicial system be used economically by promoting a comprehensive approach to the first case tried.”
 
 Id.
 

 Moore alleged, alternatively, as part of her counterclaim that she had been in peaceable possession of the disputed property for over 10 years and had gained title through adverse possession. However, the judgment in the MacMillan Bloedel lawsuit was entered July 9, 1999. The ownership of the disputed property was conclusively adjudicated, in favor of the Williamses’ predecessor in title and against Moore, in 1999 in the MacMillan Bloedel lawsuit. Therefore, Moore cannot
 
 *542
 
 have shown the 10-year prescriptive period to establish her claim of adverse possession pursuant to Ala.Code 1975, § 6-5-200, because she had no color of title to the disputed property after the entry of the final judgment in the MacMillan Bloedel lawsuit.
 
 See Morris v. Merchants Nat’l Bank of Mobile,
 
 267 Ala. 542, 103 So.2d 310 (1958). Further, the instant action and Moore’s counterclaim were filed in 2002, only three years after the resolution of MacMillan Bloedel lawsuit, and, therefore, Moore could not have shown that she was in possession of the disputed property for sufficient time to confer to her title to the property by adverse possession.
 
 Id.
 

 Regarding Moore’s trespass claim, “ ‘[o]ur law on trespass is plain that the gist of any trespass action is the interference with a right to possession of property. Absent such right of possession, there can be no action based on trespass.’
 
 Avery v. Geneva County,
 
 567 So.2d 282, 289 (Ala.1990).”
 
 Drummond Co. v. Walter Indus., Inc.,
 
 962 So.2d 753, 782 (Ala.2006). Because we hold that Moore had no right to possession of the disputed property, her trespass claim necessarily must fail.
 
 Id.
 

 Although the Williamses raise several other issues on appeal, we pretermit discussion of those issues because of our holding that Moore’s counterclaim was barred by the doctrine of res judicata. We reverse the judgment and remand this cause to the trial court to enter a judgment in favor of the Williamses.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Although Savoie has filed an "Appellee's Brief,” he has not appealed from the trial court’s judgment.
 

 [2]
 

 . Although Savoie has filed an "Appellee's Brief,” neither he nor FLB has appealed from the trial court’s judgment.